(No. 93952.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KENNETH ALEXANDER, Appellee.

*Opinion filed May 22, 2003.*

James E. Ryan and Lisa Madigan, Attorneys General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Joel D. Bertocchi, Solicitor General, and William L. Browers, David P. Haslett, Mary Beth Burns and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, of counsel), for the People.

Morrison & Morrison, P.C., of Waukegan (Donald J. Morrison, of counsel), for appellee.

JUSTICE FITZGERALD delivered the opinion of the court:

The sole issue in this case is whether our state's prohibition of so-called virtual child pornography suffers from the same constitutional infirmity that doomed the federal prohibition of virtual child pornography in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002). We hold that it does, but that it is severable from the remainder of the child pornography statute. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

On February 27, 2002, the defendant was indicted in the circuit court of Lake County on 45 counts of child pornography under section 11—20.1(a)(1)(ii) and 9 counts of child pornography under section 11—20.1(a)(6) of the Criminal Code of 1961. See 720 ILCS 5/11—20.1(a)(1)(ii), (a)(6) (West Supp. 2001). The indictment charged that the defendant possessed and intended to

distribute computer depictions of children that he knew or reasonably should have known to be under 18 years of age engaged in various sexual activities.

The defendant entered a guilty plea to the first five counts in exchange for a seven-year sentence, but later withdrew his plea after the United States Supreme Court decided *Ashcroft*. He then filed a motion to dismiss the indictment, asserting that sections 11—20.1(a)(1) and 11—20.1(a)(6) facially violated the federal and state constitutions. The defendant argued that the "depict by computer" language in section 11—20.1(a)(1) and the "depiction by computer" language in section 11—20.1(a)(6) prohibit virtual child pornography protected by *Ashcroft*. According to the defendant, "These Illinois statutes extend Illinois' prohibition against child pornography to sexually explicit images that appear to depict minors but were produced by computer without using any real children."

On May 15, 2002, the trial court granted the defendant's motion, finding sections 11—20.1(a)(1) and 11—20.1(a)(6) unconstitutional. The court stated:

"In as far as the Illinois statute is concerned, the statute was, of course, created before the pronouncements of the Supreme Court in the Ashcroft case. I find the Illinois statute to be *** as overbroad as the federal statute because it allows for someone possessing a computer-generated image to be convicted as if he were to have possessed a real child's picture, and that's something that the Constitution does not allow. That's something that the U.S. Supreme Court does not allow.

I read the Illinois statute to be similar to the federal statute, where a computer-generated picture might show someone that *appears as a minor or conveys the impression that the material is a minor*. *** [B]ecause the Illinois statute allows someone to be prosecuted and convicted because he possesses a *depiction by computer* of any child and does not make the distinction of real child or live child or an identifiable child; thus, the Illinois statute constitutionally fails gravely.

\* \* \*

Therefore, insofar as this indictment pertains to those two sections of the statute that involve virtual children, that involve computer-generated images or children depicted by computer, this motion to dismiss will be granted." (Emphases added.)

The State appealed directly to this court. See 134 Ill. 2d R. 603.

## ANALYSIS

In an appeal from an order declaring a statute unconstitutional, our review is *de novo. In re Adoption of K.L.P.*, 198 Ill. 2d 448, 453 (2002).

### 1. The First Amendment, Child Pornography, and *Ashcroft*

The first amendment (see U.S. Const., amend. I), which applies to state actions through the fourteenth amendment (see U.S. Const., amend. XIV; *De Jonge v. Oregon*, 299 U.S. 353, 364, 81 L. Ed. 278, 282, 57 S. Ct. 255, 260 (1937)),[1] prohibits content-based restrictions on speech which do not survive so-called strict scrutiny. Strict scrutiny requires a court to find that the restriction is justified by a compelling government interest and is narrowly tailored to achieve that interest. *People v. Sanders*, 182 Ill. 2d 524, 530 (1998); *Tully v. Edgar*, 171 Ill. 2d 297, 304-05 (1996).

The United States Supreme Court has held that content-based restrictions on certain categories of speech satisfy strict scrutiny. The first amendment's "vast and privileged sphere" (*Ashcroft*, 535 U.S. at 244, 152 L. Ed. 2d at 417, 122 S. Ct. at 1399) does not extend to incitement (see *Brandenburg v. Ohio*, 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969)), fighting words (see *Chap-*

---

[1]See also Ill. Const. 1970, art. I, § 4 ("All persons may speak, write and publish freely, being responsible for the abuse of that liberty").

*linsky v. New Hampshire*, 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942)), defamation (see *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 86 L. Ed. 2d 593, 105 S. Ct. 2939 (1985)), or obscenity (see *Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973)).

In *New York v. Ferber*, 458 U.S. 747, 763, 73 L. Ed. 2d 1113, 1126, 102 S. Ct. 3348, 3358 (1982), the Court added child pornography as another category of speech outside the protection of the first amendment. Content-based restrictions on child pornography satisfy strict scrutiny because child pornography is "intrinsically related" to child sexual abuse, and states have a compelling interest in safeguarding the physical and psychological health of children. *Ferber*, 458 U.S. at 756-59, 73 L. Ed. 2d at 1122-24, 102 S. Ct. at 3354-56. Additionally, the value of child pornography is "exceedingly modest, if not *de minimis*." *Ferber*, 458 U.S. at 762, 73 L. Ed. 2d at 1126, 102 S. Ct. at 3357. The Court observed that there are parameters on the category of child pornography, and consequently on the states' ability to regulate it: "As with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed. Here the nature of the harm to be combated requires that the state offense be limited to works that visually depict sexual conduct by children below a specified age." (Emphasis omitted.) *Ferber*, 458 U.S. at 764, 73 L. Ed. 2d at 1127, 102 S. Ct. at 3358.

Today, however, as technological advances test the truth of the old saw that the camera does not lie (see 4 R. Rotunda & J. Nowak, Constitutional Law § 20.61(b), at 79 (3d ed. Supp. 2003)), what falls within the category of child pornography has become increasingly unclear. As Congress has recognized, " 'new photographic and computer imagining [*sic*] technologies make it possible to

produce by electronic, mechanical, or other means, visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct.' " 18 U.S.C. § 2251, Congressional Findings, note (5) (2000), quoting Pub. L. 104—208, 110 Stat. 3009. In response, Congress targeted the growing traffic in this virtual child pornography with the Child Pornography Prevention Act of 1996 (CPPA).

In *Ashcroft*, an adult entertainment industry trade association challenged the facial validity under the first amendment of two definitional sections of the CPPA. Section 2256(8)(B) defined child pornography as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where *** such visual depiction is, or *appears to be*, of a minor engaging in sexually explicit conduct." (Emphasis added.) 18 U.S.C. § 2256(8)(B) (2000). Section 2256(8)(D) defined child pornography as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where *** such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that *conveys the impression* that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct." (Emphasis added.) 18 U.S.C. § 2256(8)(D) (2000). In short, section 2256(8)(B) addressed virtual child pornography, and section 2256(8)(D) addressed materials pandered or marketed as child pornography. The trade association asserted that these sections were overbroad and had a chilling effect, preventing its members from producing

constitutionally protected works. The federal district court granted summary judgment to the government; the court of appeals reversed (*Free Speech Coalition v. Reno*, 198 F.3d 1083 (9th Cir. 1999)).

The Court affirmed, holding that these sections were overbroad and violative of the first amendment. *Ashcroft*, 535 U.S. at 256, 258, 152 L. Ed. 2d at 425, 426, 122 S. Ct. at 1405, 1406. The Court noted that, unlike actual child pornography, virtual child pornography "do[es] not involve, let alone harm, any children in the production process" (*Ashcroft*, 535 U.S. at 241, 152 L. Ed. 2d at 415, 122 S. Ct. at 1397); virtual child pornography has no link to the crime of child sexual abuse. The Court elaborated:

> "In contrast to the speech in *Ferber*, speech that itself is the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production. Virtual child pornography is not 'intrinsically related' to the sexual abuse of children, as were the materials in *Ferber*. 458 U.S., at 759. While the Government asserts that the images can lead to actual instances of child abuse [citation], the causal link is contingent and indirect. The harm does not necessarily follow from the speech, but depends upon some unquantified potential for subsequent criminal acts." *Ashcroft*, 535 U.S. at 250, 152 L. Ed. 2d at 421, 122 S. Ct. at 1402.

The Court rejected the government's argument that such indirect effects were sufficient to pass constitutional muster because the value of child pornography is *de minimis*:

> "*Ferber* did not hold that child pornography is by definition without value. On the contrary, the Court recognized some works in this category might have significant value [citation], but relied on virtual images—the very images prohibited by the CPPA—as an alternative and permissible means of expression: '[I]f it were necessary for literary or artistic value, a person over the statutory age who perhaps looked younger could be utilized. Simulation outside of the prohibition of the statute could provide another alternative.' [*Ferber*, 458 U.S. at 763, 73 L. Ed. 2d at 1126, 102 S.

Ct. at 3357]. *Ferber*, then, not only referred to the distinction between actual and virtual child pornography, it relied on it as a reason supporting its holding. *Ferber* provides no support for a statute that eliminates the distinction and makes the alternative mode criminal as well." *Ashcroft*, 535 U.S. at 251, 152 L. Ed. 2d at 421-22, 122 S. Ct. at 1402. In short, sections 2256(8)(B) and 2256(8)(D) did not pass strict scrutiny because, unlike the child pornography statute at issue in *Ferber*, they were not narrowly tailored to advance the government's compelling interest in protecting actual children from sexual abuse.

2. The Illinois Child Pornography Statute

We turn now to examine the effect of *Ashcroft* on the Illinois child pornography statute. Section 11—20.1(a) provides in relevant part:

"(a) A person commits the offense of child pornography who:

(1) films, videotapes, photographs, or otherwise depicts or portrays by means of any similar visual medium or reproduction or depicts by computer any child whom he knows or reasonably should know to be under the age of 18 or any severely or profoundly mentally retarded person where such child or severely or profoundly mentally retarded person is:

\*\*\*

(ii) actually or by simulation engaged in any act of sexual contact involving the sex organs of the child or severely or profoundly mentally retarded person and the mouth, anus, or sex organs of another person or animal; or which involves the mouth, anus or sex organs of the child or severely or profoundly mentally retarded person and the sex organs of another person or animal; or

\* \* \*

(6) with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child or severely or profoundly mentally retarded person whom the person knows or reasonably should

know to be under the age of 18 or to be a severely or profoundly mentally retarded person, engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection[.]" 720 ILCS 5/11—20.1(a) (West Supp. 2001).

Section 11—20.1(f) provides definitions of, *inter alia*, "depict by computer," "depiction by computer," and "child":

> "(4) 'Depict by computer' means to generate or create, or cause to be created or generated, a computer program or data that, after being processed by a computer either alone or in conjunction with one or more computer programs, results in a visual depiction on a computer monitor, screen, or display.
>
> (5) 'Depiction by computer' means a computer program or data that, after being processed by a computer either alone or in conjunction with one or more computer programs, results in a visual depiction on a computer monitor, screen, or display.
> ***
> (7) 'Child' includes a film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer that is, or *appears to be*, that of a person, either in part, or in total, under the age of 18, regardless of the method by which the film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is created, adopted, or modified to appear as such. 'Child' also includes a film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer that is advertised, promoted, presented, described, or distributed in such a manner that *conveys the impression* that the film, videotape, photograph, or other similar visual medium or reproduction or depiction by computer is of a person under the age of 18." (Emphases added.) 720 ILCS 5/11—20.1(f) (West Supp. 2001).[2]

The current child pornography statute is a reenact-

---

[2]We note that section 11—20.1(f)(7) contains a serious syntax problem. If we insert this definition of "child" into the substantive offense of child pornography, the statute proscribes filming, videotaping, photographing, or depicting by other similar visual

ment of an earlier statute, which was struck down because it violated the single-subject rule (see *People v. Cervantes*, 189 Ill. 2d 80 (1999)), with two modifications: "One is that possession of child pornography must be voluntary in order to be considered criminally liable of that violation, and *it expands the definition of a 'child.' This is intended to address the issue of morphing, where they morph different parts of bodies.*" (Emphasis added.) 91st Ill. Gen. Assem., Senate Proceedings, May 11, 1999, at 36 (statements of Senator Sullivan).

This description of morphing is less than clear. In *Ashcroft*, the Court described computer morphing as

"a more common and lower tech means of creating virtual images ***. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Ashcroft*, 535 U.S. at 242, 152 L. Ed. 2d at 416, 122 S. Ct. at 1397.

The computer-morphing provision of the CPPA bars depictions of identifiable children. See 18 U.S.C. § 2256(8)(C) (2000). The definition of "child" in section 11—20.1(f)(7), by contrast, does not refer to identifiable

---

media or by computer any film, videotape, photograph, other similar visual media, or computer depiction. The statute becomes circular; it bans pictures and movies of pictures and movies.

In oral argument, the State acknowledged this anomaly and intimated that the definition of "child" is actually a definition of "child pornography." This interpretation is not entirely satisfactory because section 11—20.1(a) in a sense already defines child pornography, but the statute is similar to the federal statute at issue in *Ashcroft* in this regard. We presume the General Assembly did not intend an absurd result (*A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 532 (1999)), and we read the definition of "child" as a definition of "child pornography" (see *People v. Garrison*, 82 Ill. 2d 444, 455 (1980) (holding that a court may alter, supply, or modify words to correct obvious legislative drafting mistakes)).

children, and, accordingly, does not proscribe computer morphing as defined by the Court. Instead, section 11—20.1(f)(7) goes beyond morphing to attack the same virtual and pandered child pornography targeted by sections 2256(8)(B) and 2256(8)(D) of the CPPA. The parties seem to agree in their briefs that section 11—20.1(f)(7) is unconstitutional because its language is indistinguishable from the language of the CPPA invalidated in *Ashcroft*. At first glance, then, this case seems straightforward: apply *Ashcroft*, strike the statute, and affirm. A closer review of the record reveals that our task is not so easy.

In his motion to dismiss, the defendant challenged the constitutionality of sections 11—20.1(a)(1) and 11—20.1(a)(6), not section 11—20.1(f)(7). The defendant, however, discussed *Ashcroft* and noted that the Court was troubled by the CPPA's "appears to be" and "conveys and impression" language. The trial court clearly recognized that this constitutionally problematic language also appeared in the state statute: "I read the Illinois statute to be similar to the federal statute, where a computer-generated picture might show someone that *appears as a minor or conveys the impression that the material is a minor*." (Emphasis added.) Though the court did not strike section 11—20.1(f)(7), which contains this language, and, instead, struck two entirely separate provisions, which simply define the substantive offense of child pornography, the court's comments were broad enough to bring the issue of the constitutionality of section 11—20.1(f)(7) before this court. Section 11—20.1(f)(7), not sections 11—20.1(a)(1) and 11—20.1(a)(6), raises the concerns voiced in *Ashcroft*. Section 11—20.1(f)(7), not sections 11—20.1(a)(1) and 11—20.1(a)(6), is unconstitutional. See 155 Ill. 2d R. 366(a)(5) ("In all appeals the reviewing court may, in its discretion, and on such terms as it deems just, *** enter any judgment and make any order that ought to have been given or made").

The State contends that section 11—20.1(f)(7) is severable from the remainder of the child pornography statute. Public Act 91—229, which added section 11—20.1(f)(7), did not contain its own specific severability provision. Accordingly, we look to the Statute on Statutes' general severability provision: "If any provision of an Act *** is held invalid, such invalidity does not affect other provisions *** of the Act which can be given effect without the invalid *** provision, and to this end the provisions of each Act *** are severable, unless otherwise provided by the Act." 5 ILCS 70/1.31 (West 2000). Severability involves a two-part inquiry. First, we must determine "whether the valid and invalid portions of the statute are essentially and inseparably connected in substance." See *Fiorito v. Jones*, 39 Ill. 2d 531, 540 (1968). Second, we must determine whether the legislature would have enacted the valid portions without the invalid portions. See *People v. Warren*, 173 Ill. 2d 348, 372 (1996). This inquiry is a question of legislative intent.

Section 11—20.1(f)(7) is not inseparably connected to the child pornography statute because the statute existed for 16 years without the definition of "child." Further, the General Assembly would have enacted the child pornography statute without section 11—20.1(f)(7); it did just that in 1984. We conclude that the General Assembly would prefer to leave the remaining portions of the statute in effect. Accordingly, we strike only section 11—20.1(f)(7). See *People v. Watts*, 181 Ill. 2d 133, 151 (1998) (holding that a statutory provision was severable where it was added six years after the statute was enacted); see also *United States v. Kelly*, 314 F.3d 908, 912 (7th Cir. 2003) (holding that *Ashcroft* invalidated only two definitions of virtual child pornography and left intact a valid definition of traditional child pornography under which the defendant was convicted).

The defendant contends that this holding does not

dispose of this case. He claims that what remains of section 11—20.1 after severing the definition of "child" is still unconstitutional. Because each of the 54 counts against the defendant allege that he possessed a "depiction by computer" of a child engaged in sexual activity, he assails the definitions of "depict" and "depiction by computer" in sections 11—20.1(f)(4) and 11—20.1(f)(5). The defendant asserts that these definitions, and sections 11—20.1(a)(1) and 11—20.1(a)(6), which mention these terms, are not limited to actual children. Consequently, argues the defendant, the state statute, like the federal statute in *Ashcroft*, fails strict scrutiny under *Ferber*.

"In determining the constitutionality of a statute, a reviewing court must first ascertain the statute's meaning by applying ordinary rules of construction and then decide whether, as construed, the statute comports with constitutional requirements." *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995). That is, before we can determine whether sections 11—20.1(f)(4) and 11—20.1(f)(5)—and concomitantly sections 11—20.1(a)(1) and 11—20.1(a)(6)—are impermissible content-based restrictions on speech warranting strict scrutiny, we must determine what they mean. In interpreting a statute, the primary rule of construction is to ascertain and effectuate the legislature's intent. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). We look to the language of the statute as the best indication of this intent, and we give the statutory terms their ordinary meaning. *Opyt's Amoco, Inc. v. Village of South Holland*, 149 Ill. 2d 265, 277 (1992).

Because we have concluded that the definition of "child" in section 11—20.1(f)(7) is constitutionally infirm, we must resort to plain language. "Child" means "a young person of either sex esp. between infancy and

youth." See Webster's Third New International Dictionary 388 (1993). "Person," in turn, means "an individual human being" or "a human being as distinguished from an animal or thing." See Webster's Third New International Dictionary 1686 (1993); see also Ill. Rev. Stat. 1981, ch. 38, par. 11—20a(a)(3) (child pornography " '[m]atter' " means "any photographic product depicting *actual human models or actors*, whether in the form of still photographs, motion pictures, or videotape" (emphasis added)). "Child" means young human being; child means actual child. Further, sections 11—20.1(a)(1) and 11—20.1(a)(6) both require that the defendant "knows or reasonably should know" that the child depicted is under the age of 18. See 720 ILCS 5/11—20.1(a)(1), (a)(6) (West Supp. 2001). In the context of virtual child pornography, the State could never satisfy this *scienter* requirement because a virtual child is ageless. We hold that sections 11—20.1(a)(1) and 11—20.1(a)(6) prohibit, *inter alia*, making and possessing sexually explicit computer depictions of any actual child under 18 years of age. Accordingly, these sections pass strict scrutiny under *Ferber*.

Statutory interpretation aside, the defendant's argument is essentially a flawed syllogism: *Ashcroft* invalidated content-based restrictions on virtual child pornography; virtual child pornography often contains computer-graphic images; therefore, *Ashcroft* invalidated restrictions on computer depictions of child pornography. But not all computer depictions of child pornography are virtual child pornography. In fact, the depict/depiction-by-computer provisions have nothing to do with the content of the images—whether actual or virtual—and everything to do with the method by which they are displayed. See 88th Ill. Gen. Assem., Senate Proceedings, December 1, 1994, at 45 (statements of Senator Dudycz) (Senate Bill 1153, which added the depict/depiction-by-computer provisions, "expands child pornography to

include computer *distributed* pornography" (emphasis added)). The addition of computer images to the statute simply recognized the technological reality that child pornography could be memorialized in a computer's memory at least as easily as it could be memorialized on paper, film, or videotape. This reading is entirely consistent with *Ashcroft*, which did not strike that part of the CPPA defining "child pornography" as "any visual depiction, including any photograph, film, video, picture, or *computer or computer generated image or picture*, whether made or produced by electronic, mechanical, or other means." (Emphasis added.) 18 U.S.C. § 2256(8) (2000).

*Ashcroft* addressed only the question of whether a criminal prohibition of virtual child pornography—child pornography produced without using actual children—violated the first amendment. It did not invalidate all child pornography laws. We need not revisit the issue of whether criminalizing child pornography of actual, not virtual, children violates the first amendment. That issue was answered conclusively and convincingly in *Ferber*, and the Illinois child pornography statute comports with that case. See *People v. Lamborn*, 185 Ill. 2d 585, 590 (1999).

## CONCLUSION

For the reasons that we have discussed, we reverse and remand for further proceedings.

*Reversed and remanded.*