**2022 IL 127683**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 127683)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JOHN T. McKOWN, Appellant.

*Opinion filed November 28, 2022.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Anne M. Burke, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1     The questions presented in this appeal are (1) whether pictures of young children that defendant modified to depict sexual conduct constitute child pornography under section 11-20.1 of the Criminal Code of 2012 (Code) (720 ILCS 5/11-20.1 (West 2016)), (2) if so, whether section 11-20.1 of the Code is consistent

with the first amendment to the United States Constitution (U.S. Const., amend. I), and (3) whether sufficient corroboration existed to satisfy the *corpus delicti* rule as to defendant's convictions for various sexual offenses. Answering all questions in the affirmative, we affirm the appellate court's judgment. 2021 IL App (4th) 190660.

¶ 2                                   BACKGROUND

¶ 3        Based on allegations that he sexually abused his grandson, J.M., the State charged defendant John T. McKown with three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)) and three counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)).

¶ 4        In count I, defendant was charged with predatory criminal sexual assault of a child for placing his penis in J.M.'s anus. In count II, defendant was charged with predatory criminal sexual assault of a child for placing his penis in J.M.'s mouth. In count III, defendant was charged with predatory criminal sexual assault of a child for placing an object in J.M.'s anus. In count IV, defendant was charged with aggravated criminal sexual abuse for placing J.M.'s hand on defendant's penis. In count V, defendant was charged with aggravated criminal sexual abuse for transferring his semen onto J.M.'s buttocks. In count VI, defendant was charged with aggravated criminal sexual abuse for placing his hand on J.M.'s penis.

¶ 5        The State also charged defendant with one count of child pornography (*id.* § 11-20.1(a)(1)(ii)) for depicting or portraying a child whom he knew to be under the age of 13 where the child was actually or by simulation engaged in an act of sexual conduct that involved the child's mouth and the sex organs of another person (count VII).

¶ 6        In April 2019, defendant's bench trial began. J.M. was then 12 years old. He testified that, for several years up to 2017, he would regularly visit his father, his grandfather (defendant), and his grandmother at their home in Decatur, Illinois. According to J.M., defendant started sexually abusing him when he was roughly six years old. J.M. testified that defendant anally penetrated him on numerous occasions in the bathroom of defendant's home. When defendant finished, he left a "sticky" substance on J.M.'s buttocks. J.M. also testified that defendant forced him

to perform oral sex and that defendant touched J.M.'s penis with his hand several times. J.M. denied having ever touched defendant's penis.

¶ 7        J.M. testified that defendant told him not to tell anyone about the abuse or he would "beat [him] up" and otherwise harm J.M.'s family. According to J.M., the abuse last occurred in the summer of 2017, which was the last time that J.M. stayed at defendant's home. He testified that he finally told family members about the abuse because he "was just tired of it."

¶ 8        J.M. further testified that he kept his toys in the basement of defendant's home. He reported that defendant had a "little area" in the basement. Once, when J.M. went into that area, he saw "pictures of *** cut out little girls with pictures of cutout penises in their mouths."

¶ 9        J.M. acknowledged having been interviewed by someone at the Child Advocacy Center in December 2017 and in October 2018. On cross-examination, defense counsel elicited certain inconsistencies between J.M.'s testimony at trial and his statements during the two interviews. For instance, during the first interview in December 2017, J.M. stated that defendant had abused him in three different houses, whereas at trial, he testified that the abuse happened exclusively in one home. During the interview from October 2018, J.M. stated that his grandmother sexually assaulted him with defendant's assistance. At trial, J.M. testified that only defendant abused him.

¶ 10       Detective Eric Matthews of the Decatur Police Department also testified. On January 15, 2018, Matthews went to defendant's home to speak with him about J.M.'s allegations of abuse. According to Matthews, defendant initially denied them. Matthews testified that defendant gave him permission to search the home and directed him to an area of the basement that defendant referred to as his man cave. Defendant told Matthews that he watched pornography there.

¶ 11       When Matthews entered that part of the basement, he saw a "makeshift desk" with stacks of DVDs, magazines, and a mostly empty jar of Vaseline. Matthews testified that he also saw "multiple cutout pictures of young female children's faces that had slits cut into the mouths and cutout images of male penises inserted into those slits." According to Matthews, defendant informed him that he had been cutting out images of young girls' faces and inserting penises into their mouths for

years. Defendant further told Matthews that he had been sexually abused as a child and that he believed he needed counseling.

¶ 12    Matthews testified that, when he asked defendant how J.M. would have the information needed to make such allegations, defendant stated that J.M. had walked in on him a few times while he was masturbating. Upon Matthews's request, defendant agreed to speak with him at the police station. Matthews drove defendant to the police station; he was neither handcuffed nor placed under arrest at that time.

¶ 13    The recording of defendant's interview at the police station on January 15, 2018, was played at trial. During the interview, defendant eventually told an officer that J.M. had walked into the basement while defendant was masturbating and grabbed defendant's penis. According to defendant, J.M. may have gotten defendant's semen on his hand. Defendant later admitted that he did not try to stop J.M. from touching him. Defendant claimed that, on another occasion, he taught J.M. how to masturbate. Additionally, defendant stated that he masturbated to the images of young girls—whose faces he cut from parenting magazines—roughly every two weeks.

¶ 14    Matthews testified that on January 24, 2018, defendant was arrested and brought back to the police station. Matthews interviewed defendant again, and a recording of the interview from January 24, 2018, was played at trial. At the outset, Matthews informed defendant of the charges against him and read him the *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Matthews then encouraged defendant to make a full disclosure of what happened. Defendant told him that the sexual contact with J.M. occurred in the basement of his home, not in the bathroom. Defendant stated that he placed his hand on J.M.'s penis to show him how to masturbate. Defendant also asserted that J.M. asked him about anal sex and then pulled his pants down and bent over. Defendant stated that he ran his penis "up and down" J.M.'s buttocks, and he acknowledged that his penis may have gone into J.M.'s anus.

¶ 15    On cross-examination, Matthews acknowledged that defendant's recounting of events changed significantly from the first interview to the second interview. Matthews further acknowledged that he repeatedly suggested that defendant was not being honest during the two interviews. Yet, Matthews testified that defendant never appeared to be confused or in distress during the interviews. According to

Matthews, at various points during the interviews, he attempted to take a break only to have defendant call him back to continue the conversation. And Matthews testified on redirect examination that it was not uncommon for a defendant to change his story over time.

¶ 16   Defendant's wife testified that she had never seen J.M. in the bathroom with defendant. J.M.'s father (defendant's son) similarly testified that he had never seen defendant in the bathroom with J.M. According to J.M.'s father, defendant did not spend much one-on-one time with J.M.

¶ 17   The Macon County circuit court ultimately found that the State had proven defendant guilty beyond a reasonable doubt of predatory criminal sexual assault of a child (count I), two counts of aggravated criminal sexual abuse (counts IV and V), and unlawful possession of child pornography (count VII).[1] The court acquitted defendant of two counts of predatory criminal sexual assault of a child (counts II and III) and one count of aggravated criminal sexual abuse (count VI).

¶ 18   The trial court credited defense counsel for highlighting inconsistencies in J.M.'s testimony. The court stated that, if the State's case were based solely on J.M.'s testimony, defendant may have found himself "in a much different position." At the same time, the court had no doubt that "something bad" happened to J.M. The court explained that defendant's uncoerced admissions "were obviously very important, if not critical, to the State's case." The court also determined that the physical evidence found in defendant's basement corroborated defendant's admission that he had "violated" J.M. On the child pornography count, the court noted that the images involved "actual children apparently cut out of parenting magazines" and that defendant had taped penises into their mouths. The court determined that the images constituted child pornography.

¶ 19   The trial court sentenced defendant to 15 years' imprisonment for predatory criminal sexual assault of a child (count I), 5 years' imprisonment for each count of aggravated criminal sexual abuse (counts IV and V), and 3 years' imprisonment for child pornography (count VII). Defendant's sentences on the latter counts ran

---

[1]Although the State charged defendant with child pornography, the trial court *sua sponte* found him guilty of the lesser included offense of possessing child pornography.

concurrently with one another but consecutively to count I, for a total of 20 years' imprisonment.

¶ 20    On appeal, defendant argued that his convictions for predatory criminal sexual assault of a child and aggravated criminal sexual abuse were obtained in violation of the *corpus delicti* rule and that the State's evidence did not establish his guilt of those offenses beyond a reasonable doubt. 2021 IL App (4th) 190660, ¶ 35. Defendant also argued that the material he possessed could not constitutionally be deemed child pornography. *Id.* Thus, defendant asked the appellate court to reverse his convictions. *Id.*

¶ 21    The appellate court explained that the *corpus delicti* of an offense is simply the commission of a crime. *Id.* ¶ 38. " '[A]long with the identity of the person who committed the offense, it is one of two propositions the State must prove beyond a reasonable doubt to obtain a valid conviction.' " *Id.* (quoting *People v. Lara*, 2012 IL 112370, ¶ 17). " 'When a defendant's confession is part of the *corpus delicti* proof, the State must also provide independent corroborating evidence.' " *Id.* (quoting *Lara*, 2012 IL 112370, ¶ 17).

¶ 22    The appellate court observed that, in count IV, the State charged defendant with aggravated criminal sexual abuse of J.M., asserting that defendant " 'had J.M. place his hand on the defendant's penis for the purpose of sexual gratification.' " *Id.* ¶ 42. Yet, the only evidence that J.M. touched defendant's penis came from defendant's recorded statements to the police. *Id.* J.M. denied having touched defendant's penis with his hand at trial, and J.M.'s recorded statements did not describe the sexual conduct alleged in count IV. *Id.* Thus, the appellate court ruled that defendant's conviction for that offense violated the *corpus delicti* rule and must be reversed. *Id.* ¶ 46. The court upheld defendant's convictions on counts I and V, finding that J.M.'s testimony corroborated defendant's admissions to those acts.

¶ 23    With respect to his conviction for possessing child pornography, the appellate court noted the materials that defendant possessed involved images of real, identifiable children that were combined with images of penises to depict acts of oral penetration. *Id.* ¶ 67. The court determined that such materials fell within the coverage of section 11-20.1 of the Code, and it rejected defendant's claim that such a ruling would violate the first amendment. *Id.*

¶ 24     This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 25                                    ANALYSIS

¶ 26     We first consider whether images of young girls that defendant altered to depict sexual conduct are child pornography within the meaning of section 11-20.1 of the Code. Statutory interpretation presents a question of law that we review *de novo*. *In re Julie M.*, 2021 IL 125768, ¶ 27. The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* The best indicator of that intent is the statutory language, given its plain and ordinary meaning. *Id.* When the language of a statute is clear, courts may not depart from its terms or construe the statute other than by its plain language. *People v. Grant*, 2022 IL 126824, ¶ 24.

¶ 27     The trial court found defendant guilty of unlawful possession of child pornography. A person violates section 11-20.1 of the Code if he knowingly possesses a "photograph or other similar visual reproduction *** of any child *** whom the person knows or reasonably should know to be under the age of 18," "where such child is *** actually or by simulation engaged in *** sexual conduct involving *** the mouth *** of the child *** and the sex organs of another person." 720 ILCS 5/11-20.1(a)(1)(ii), (6) (West 2016). Here, defendant cut images of young girls from parenting magazines, cut slits into their mouths, and pasted pictures of erect penises into the slits. Thus, defendant possessed a visual reproduction of a child whom he knew to be under the age of 18 where the child was by simulation engaged in sexual conduct involving the child's mouth and another person's sex organ. As the trial and appellate courts correctly determined, defendant's conduct fell within the statutory prohibition.

¶ 28                    Morphed Child Pornography and the First Amendment

¶ 29     We next address whether the first amendment to the United States Constitution permits such a prohibition. The constitutionality of a statute is a question of law that we review *de novo*. *People v. Minnis*, 2016 IL 119563, ¶ 21. Statutes are presumed to be constitutional; the party challenging the constitutionality of a statute

- 7 -

has the burden of clearly establishing its invalidity. *Id.* Where reasonably possible, a court must construe a statute to uphold its constitutionality. *People v. Relerford*, 2017 IL 121094, ¶ 30.

¶ 30    In *New York v. Ferber*, 458 U.S. 747, 756 (1982), the United States Supreme Court resolved that states "are entitled to greater leeway in the regulation of pornographic depictions of children." The statute at issue in *Ferber* prohibited the distribution of material depicting children engaged in sexual conduct. The Court found it "evident beyond the need for elaboration that a state's interest in safeguarding the physical and psychological well-being of a minor is compelling." (Internal quotation marks omitted.) *Id.* at 756-57. Crediting "[t]he legislative judgment, as well as the judgment found in the relevant literature," the Court recognized that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758.

¶ 31    The Court concluded that the "distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children." *Id.* at 759. Further, the Court observed that the "value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis*." *Id.* at 762. Accordingly, the Court held that the statute at issue did not violate the first amendment. *Id.* at 774.

¶ 32    "Given the gravity of the [s]tate's interests in this context," the Supreme Court also has held that a state "may constitutionally proscribe the possession and viewing of child pornography." *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). The Court observed that "materials produced by child pornographers permanently record the victim's abuse" and that their "continued existence causes the child victims continuing harm by haunting the children in years to come." *Id.* The Court determined that a "[s]tate's ban on possession and viewing encourages the possessors of these materials to destroy them." *Id.*

¶ 33    A state may not, however, "prohibit[ ] child pornography that does not depict an actual child." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240 (2002). In *Free Speech Coalition*, the Child Pornography Prevention Act of 1996 (18 U.S.C. § 2251 *et seq.* (Supp. II 1994)) extended "the federal prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children." *Free Speech Coalition*, 535 U.S. at 239.

The Supreme Court found that that speech "record[ed] no crime and create[d] no victims by its production." *Id.* at 250. The Court also determined that virtual child pornography, which was produced without using real children, was not "intrinsically related" to the sexual abuse of children, as were the materials in *Ferber*. (Internal quotation marks omitted.) *Id.* Concluding that the sections at issue suppressed a substantial amount of lawful speech, the Court held that they were unconstitutional. *Id.* at 258.

¶ 34    The Supreme Court observed that a separate section in that statute prohibited "a more common and lower tech means of creating virtual images, known as computer morphing." *Id.* at 242. Morphing, the Court explained, occurred when pornographers altered "innocent pictures of real children so that the children appear to be engaged in sexual activity." *Id.* "Although morphed images may fall within the definition of virtual child pornography," the Court determined that "they *implicate the interests of real children* and are in that sense closer to the images in *Ferber*." (Emphasis added.) *Id.* That said, because the respondents in *Free Speech Coalition* did not challenge that provision, the Court did not consider it. *Id.*

¶ 35    Returning to this case, the materials that defendant possessed did not reflect live performances of children engaged in sexual conduct, which distinguishes them from the materials in *Ferber*. At the same time, defendant's materials involved real children whose images he modified to depict sexual conduct, which distinguishes them from the materials in *Free Speech Coalition*. Defendant's "collages" fall into the category of morphed child pornography, which includes materials that are "created by altering a real child's image to make it appear that the child is engaged in some type of sexual activity." *State v. Tooley*, 114 Ohio St. 3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 18.

¶ 36    This court joins many state and federal courts in holding that morphed child pornography is not protected by the first amendment. See, *e.g.*, *United States v. Mecham*, 950 F.3d 257, 260 (5th Cir. 2020) (agreeing "with the majority view that morphed child pornography does not enjoy first amendment protection"); *Doe v. Boland*, 698 F.3d 877, 883 (6th Cir. 2012) (rejecting defendant's first amendment challenge to morphed child pornography where "Jane Doe and Jane Roe are real children" whose "likenesses are identifiable in [defendant's] images"); *United States v. Hotaling*, 634 F.3d 725, 730 (2d Cir. 2011) ("Sexually explicit images that

use the faces of actual minors are not protected expressive speech under the First Amendment."); *McFadden v. State*, 67 So. 3d 169, 184 (Ala. Crim. App. 2010) (ruling that statutes "which criminalize the possession \*\*\* of collage or montage images of child pornography \*\*\* created without \*\*\* photographing actual sexual conduct on the part of an identifiable minor, but edited to appear as though the children are engaged in sexual conduct, do not violate the First Amendment"); *Tooley*, 2007-Ohio-3698, ¶ 24 (declining to extend *Free Speech Coalition* "to cover morphed child pornography when the United States Supreme Court did not do so").

¶ 37      We recognize that, in *Free Speech Coalition*, the Supreme Court addressed *virtual* images of children that were altered so that the children appeared to be engaged in sexual activity. In this case, although the images were of real children with images of penises inserted into their mouths, defendant's materials were handmade. Yet, the Court's finding that morphed images "implicate the interests of real children" does not appear to have been driven by whether the images were computer generated. *Free Speech Coalition*, 535 U.S. at 242. Rather, it appears to have been driven by the psychological and other damage that may follow when real children's images are used in depictions of sexual activity. Indeed, as various courts have observed, morphed images of a real child engaged in sexual conduct may cause various harms to that child. See, *e.g.*, *Mecham*, 950 F.3d at 265 ("[M]orphed child pornography implicates the reputational and emotional harm to children that has long been a justification for excluding real child pornography from the first amendment."); *Boland*, 698 F.3d at 881 (confirming that "morphed images may create many of the same reputational, emotional and privacy injuries as actual pornography").

¶ 38      Citing *United States v. Williams*, 553 U.S. 285, 297 (2008), defendant argues that, to constitute child pornography, the materials must cause a reasonable viewer to believe that children engaged in sexual conduct on camera. *Williams*, however, did not reach that conclusion. At issue in *Williams* was a statute that, in part, made it unlawful to knowingly present any material that contained " 'a visual depiction of an actual minor engaging in sexually explicit conduct.' " *Id.* at 290 (quoting 18 U.S.C. § 2252A(a)(3)(B) (Supp. V 2000)). "Sexually explicit conduct" was defined to include " 'actual or simulated \*\*\* sexual intercourse.' " *Id.* (quoting 18 U.S.C. § 2256(2)(A) (Supp. V 2000)). During its explication of certain statutory terms, the Supreme Court remarked that " 'simulated' sexual intercourse is not sexual

intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though *** it may not actually have occurred. The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera." *Id.* at 297. Thus, the Supreme Court was not making a broad pronouncement on child pornography in general; it was only expounding upon a term in a particular statute.

¶ 39 Relying on *Free Speech Coalition*, defendant also argues that a child pornography statute is unconstitutionally overbroad when it is evident that no child was sexually abused to create the image. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Free Speech Coalition*, 535 U.S. at 255. The Supreme Court has "repeatedly emphasized that where a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' " *Osborne*, 495 U.S. at 112 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)); see also *Ferber*, 458 U.S. at 771 ("The premise that a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications is hardly novel."); *Minnis*, 2016 IL 119563, ¶ 44.

¶ 40 Section 11-20.1 of the Code, in part, makes it unlawful for a person to "with knowledge of the nature or content thereof, possess[ ] any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child *** whom the person knows or reasonably should know to be under the age of 18" where the child is "actually or by simulation engaged in any act of sexual penetration or sexual conduct involving the sex organs of the child *** and the mouth, anus, or sex organs of another person" or "which involves the mouth *** of the child *** and the sex organs of another person." 720 ILCS 5/11-20.1(a)(1)(ii), (6) (West 2016). Section 11-20.1 prohibits child pornography that involves real children, and such prohibitions are plainly constitutional. See *Ferber*, 458 U.S. at 773 (concluding that New York's child pornography statute was "the paradigmatic case of a state statute whose legitimate reach dwarfs its arguably impermissible applications"); *People v. Alexander*, 204 Ill. 2d 472, 486 (2003) (holding that, because section 11-20.1(a)(1), (6) prohibits making and possessing

sexually explicit depictions of any actual child under 18 years of age, the sections comport with *Ferber*).

¶ 41       Defendant's contrary argument rests on his belief that morphed child pornography is protected speech. Yet, the Supreme Court has not held that it is. Indeed, in *Free Speech Coalition*, the Court asserted that morphed images, which did not record children engaging in live sex acts, implicated *Ferber*. And this court, along with numerous others, has held that morphed child pornography is not protected by the first amendment. See *supra* ¶ 36. In short, defendant has not clearly established that section 11-20.1 of the Code chills a substantial amount of protected speech, and thus, we reject his claim that the statute is overbroad.

¶ 42       Defendant further contends that upholding his conviction for possessing child pornography would contravene this court's decision in *Alexander*, 204 Ill. 2d 472. Defendant is mistaken. In *Alexander*, the General Assembly had defined "child" in section 11-20.1(f)(7) of the child pornography statute to include a " 'film, videotape, photograph, or other similar visual medium *** that is, or *appears to be*, that of a person *** under the age of 18.' " (Emphasis in original.) *Id.* at 481 (quoting 720 ILCS 5/11-20.1(f) (West Supp. 2001)). "Child" was also defined to include a " 'film, videotape, photograph, or other similar visual medium or reproduction *** that is advertised, *** described, or distributed in such a manner that *conveys the impression* that the film, videotape, photograph, or other similar visual medium or reproduction *** is of a person under the age of 18.' " (Emphasis in original.) *Id.* (quoting 720 ILCS 5/11-20.1(f) (West Supp. 2001)).

¶ 43       In *Alexander*, we observed that these definitions of "child" did not refer to identifiable children. *Id.* at 482-83. Rather, section 11-20.1(f)(7) went "beyond morphing to attack the same virtual and pandered child pornography" as did the provisions in *Free Speech Coalition*. *Id.* at 483. We therefore held that section 11-20.1(f)(7) was unconstitutional. *Id.* Here, by contrast, defendant possessed images of actual, identifiable children that he altered to depict sexual conduct. *Alexander* did not confront that issue, and the decision poses no impediment to upholding defendant's conviction for possessing child pornography.

¶ 44                           The *Corpus Delicti* Rule

¶ 45        Defendant separately argues that the *corpus delicti* rule bars his convictions for predatory criminal sexual assault and aggravated criminal sexual abuse. "Proof of an offense requires proof of two concepts: first, that a crime occurred, or the *corpus delicti*, and second, that it was committed by the person charged." (Internal quotation marks omitted.) *People v. King*, 2020 IL 123926, ¶ 53. The *corpus delicti*, or the commission of a crime, generally cannot be proven by a defendant's admission, confession, or out-of-court statement alone. *Lara*, 2012 IL 112370, ¶ 17. When a defendant's confession is part of the *corpus delicti* proof, the State also must provide independent corroborating evidence. *Id.*

¶ 46        The corroboration requirement stems from a historical mistrust of extrajudicial confessions. *People v. Sargent*, 239 Ill. 2d 166, 183 (2010). Among the reasons cited for this mistrust are that (1) confessions are unreliable if they are coerced and, (2) for various psychological reasons, people confess to crimes that either never occurred or for which they are not legally responsible. *Id.* That said, the independent corroborating evidence need only tend to show the commission of a crime. *Lara*, 2012 IL 112370, ¶ 18. "It need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt." *Id.* This court has not demanded an exact match between the independent evidence and the details in the defendant's confession; instead, we only require some consistency tending to confirm and strengthen the confession. *Id.* ¶ 42.

¶ 47        In this case, defendant was convicted of predatory criminal sexual assault of a child for placing his penis in J.M.'s anus. See 720 ILCS 5/11-1.40(a)(1) (West 2016) (a person commits predatory criminal sexual assault of a child if he or she is 17 years of age or older and "commits an act of contact *** between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused" and "the victim is under 13 years of age"). Defendant also was convicted of aggravated criminal sexual abuse for transferring his semen onto J.M.'s buttocks. See *id.* § 11-1.60(c)(1)(i) ("A person commits aggravated criminal sexual abuse if *** that person is 17 years of age or over and *** commits an act of sexual conduct with a victim who is under 13 years of age[.]").

¶ 48 During the relevant period, defendant was well above 17 years of age, and J.M. was under 13 years of age. During one of his interviews with police officers, defendant told the officer that he had run his penis "up and down" J.M.'s buttocks and conceded that his penis may have entered J.M.'s anus. At trial, J.M. testified that defendant had anally penetrated him and that defendant left a sticky substance in his buttocks. This testimony, among other evidence, corroborated defendant's confession and was enough to satisfy the *corpus delicti* rule. As this court has noted, "[t]here is no requirement that the independent evidence and the details of the confession correspond in every particular." *People v. Furby*, 138 Ill. 2d 434, 451 (1990). "What is necessary are facts or circumstances independent of the confession, and consistent therewith, tending to confirm and strengthen the confession." (Internal quotation marks omitted.) *Id.* at 452. That standard was satisfied here.

¶ 49 Defendant emphasizes certain inconsistencies between his recounting of the abuse and J.M.'s description of the abuse. For instance, J.M. testified that defendant sexually abused him in the bathroom of defendant's home, while defendant stated that the sexual conduct occurred in the basement. Defendant also underscores various inconsistencies in J.M.'s trial testimony compared to J.M.'s interviews with the Child Advocacy Center, and he therefore claims that J.M.'s testimony was simply not credible. "Under our system of criminal justice, the trier of fact alone is entrusted with the duties of examining the evidence and subsequently determining whether the State has met its burden of proving the elements of the charged offense beyond a reasonable doubt." *Lara*, 2012 IL 112370, ¶ 46. Here, the trial court reviewed the evidence and determined that it sufficed to prove defendant's guilt of the offenses beyond a reasonable doubt. Defendant's arguments provide no basis for this court to disturb his convictions on counts I and V.

¶ 50                                CONCLUSION

¶ 51 For these reasons, we hold that defendant's materials are morphed child pornography and are not protected by the first amendment. We further hold that sufficient independent evidence corroborated defendant's admissions and, thus, a rational factfinder could have found him guilty beyond a reasonable doubt of predatory criminal sexual assault of a child and aggravated criminal sexual abuse.

- 14 -

Accordingly, we affirm the appellate court's judgment.

¶ 52       Appellate court judgment affirmed.

¶ 53       Circuit court judgment affirmed in part and reversed in part.

¶ 54       JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.