**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240185-U

Order filed February 10, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0185 Circuit No. 22-CF-191 |
| | ) | |
| RYAN J. JOHNSON, | ) ) | Honorable Michael C. Jansz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The statute under which defendant was convicted is constitutional on its face and as applied to defendant.

¶ 2     Defendant, Ryan J. Johnson, appeals his unlawful possession of a weapon by a felon (UPWF) conviction, arguing the UPWF statute criminalizing the possession of weapons by felons is unconstitutional both facially and as applied to him. We affirm.

¶ 3                                            I. BACKGROUND

¶ 4    Following a jury trial, defendant was found guilty of UPWF (720 ILCS 5/24-1.1(a) (West 2022)). The underlying indictment alleged defendant possessed a firearm after being convicted of a prior felony UPWF offense. Defendant was sentenced to 8½ years' imprisonment. The presentence investigation report (PSI) introduced at sentencing indicated that defendant had prior convictions for resisting a peace officer, battery causing bodily harm, battery making physical contact, theft, and felony theft.

¶ 5                                    II. ANALYSIS

¶ 6    On appeal, defendant argues that the UPWF statute is unconstitutional both facially and as applied to him in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Defendant acknowledges that we previously upheld the facial constitutionality of the unlawful use of a weapon by a felon (UUWF) statute in *People v. Travis*, 2024 IL App (3d) 230113, ¶ 33.[1] However, defendant asserts that *Travis* failed to establish a proper historical analogue for permanently disarming individuals based on criminal history.

¶ 7    As presumptively constitutional, courts must interpret statutes to uphold their constitutionality whenever reasonably possible. *People v. Wells*, 2023 IL App (3d) 210292, ¶ 19. The challenging party bears the burden of establishing that a statute is constitutionally invalid. *People v. McKown*, 2022 IL 127683, ¶ 29. As a question of law, we review the constitutionality of a statute *de novo*. *Id.*

¶ 8    A challenge to the facial constitutionality of a statute will only prevail if a defendant demonstrates that there are no set of facts which would render it valid. *Caulkins v. Pritzker*, 2023

---

[1]*Travis* alternatively refers to the same singular offense codified under section 24-1.1 as UUWF. See *People v. Morales*, 2024 IL App (3d) 230433-U, ¶ 12 ("Whether the offense is labeled UUWF or UPWF is a distinction without a difference.").

IL 129453, ¶ 29. The constitutionality of a statutory firearm regulation is determined using a two-part analysis that first considers (1) if the conduct at issue falls within the plain text of the second amendment and, if so, (2) whether the statute is consistent with the nation's history and tradition of firearm regulations. *Bruen*, 597 U.S. at 24. Notably, the United States Supreme Court emphasized that regulations prohibiting felons from possessing firearms remain presumptively lawful post *Bruen*. *United States v. Rahimi*, 602 U.S. 680, 699 (2024). *In Travis*, we applied *Bruen*'s two-step framework and concluded that (1) the plain language of the second amendment encompasses firearm possession and felons are included as members of "the people" to whom the amendment applies, and (2) felon dispossession statutes are consistent with the country's history and tradition of disarming individuals that posed a risk of danger or criminality. *Travis*, 2024 IL App (3d) 230113, ¶¶ 25, 28-33.

¶ 9    Contrary to defendant's assertion, *Travis* provides a proper historical analogue for the UPWF statute that extends beyond its initial reference to the criminal disarmament proposal made during Pennsylvania's ratifying convention to include precursory restrictions such as colonial-era attainder, so-called "going armed" laws, and later federal prohibitions related to organized crime. *Id.* ¶¶ 29-30. These historical antecedents satisfy *Bruen*'s second prong as they establish a comparable tradition of dispossession from before, during, and after the nation's founding. *Bruen*, 597 U.S. at 27. For instance, in the American colonies, criminal offenses were punishable by permanent forfeiture of an offender's estate, which included firearms. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 96. Additional colonial prohibitions for "disavowal of the rule of law" and regulations disarming those displaying an absence of allegiance during the Revolutionary War period demonstrate the authority of founding-era legislatures to categorically restrict firearm possession based upon legally adverse conduct. (Internal quotation marks omitted.) *United States*

*v. Ware*, 673 F. Supp. 3d 947, 958-59 (S.D. Ill. 2023). "[G]oing armed laws prohibited riding or going armed, with dangerous or unusual weapons, [to] terrify[ ] the good people of the land." (Internal quotation marks omitted.) *Rahimi*, 602 U.S. at 697. Violators of these laws were disarmed and imprisoned for threatening public order and safety. *Id.* During the last century, the Federal Firearms Act of 1938 arose in response to an "increase in organized crime and gangster violence" and was subsequently expanded in 1961 to disarm all felons. (Internal quotation marks omitted.) *United States v. Banuelos*, 640 F. Supp. 3d 716, 723 (W.D. Tex. 2022). While not identical to the UPWF statute, this veritable lineage of predecessors establishes a comparable tradition of disarmament premised on legal disobedience. See *Bruen*, 597 U.S. at 29-30 (a proper analogue does not require a "historical *twin*," as precursory and modern-day regulations are sufficiently analogous if both "impose a comparable burden on the right of armed self-defense" that is "comparably justified" in its purpose).

¶ 10 Defendant further contends the UPWF's permanent prohibition is inconsistent with these historical regulations. However, the UPWF statute is not an inexpungible restriction as it creates an exception for those that have obtained relief under section 10 of the Firearm Owners Identification Card Act (430 ILCS 65/10 (West 2022)). See 720 ILCS 5/24-1.1(a) (West 2022). Therefore, we hold that the UPWF statute is facially constitutional as it comports with a longstanding history and tradition of disarming individuals based upon criminal conduct and imposes virtually no burden on the rights of law-abiding citizens to keep and bear arms. *Travis*, 2024 IL App (3d) 230113, ¶¶ 29-31, 33.

¶ 11 Next, defendant argues that his conviction should be reversed because the UPWF statute is unconstitutional as applied to him. In contrast to facial challenges, as-applied challenges require a showing that the statute is unconstitutional as it applies to a defendant's specific facts and

4

circumstances and therefore must first be raised in the circuit court to develop a record sufficient for appellate review. *People v. Harris*, 2018 IL 121932, ¶¶ 38-39. As a threshold matter, defendant acknowledges he did not assert his constitutional claims prior to this appeal. The State argues that defendant's failure to raise his as-applied challenge amounts to forfeiture, as the absence of an evidentiary hearing on the issue has rendered the record insufficiently developed for review. We disagree. Although many of the specific underlying factual findings may be unknown, defendant's undisputed criminal history is otherwise contained in the record and is adequate for consideration of defendant's as-applied challenge. See *Travis*, 2024 IL App (3d) 230113, ¶ 18 (considering an as-applied challenge to felon dispossession statutes for the first time on appeal).

¶ 12        Defendant argues there is no historical analogue to find the UPWF statute constitutional as applied to him because regulatory predecessors traditionally sought to disarm individuals deemed to be dangerous or violent. Defendant asserts that he was not acting violently during the commission of the instant UPWF offense and his prior felony convictions were for nonviolent offenses.[2] We note that the record does not contain any factual recitations regarding defendant's previous felony offenses, and we are, therefore, unable to ascertain the violent nature of defendant's actions in those cases. However, the facially constitutional UPWF statute prohibits firearm possession based on felon status irrespective of whether the conduct at the time of the offense or the nature of the prior felony was nonviolent. *Id.* ¶ 36. Moreover, defendant's assertion ignores the relevance of the lengthy criminal history reflected in his PSI, which includes a prior felony UPWF offense. Historical regulations reflect a tradition of disarming those that fail to abide by the law and defendant has demonstrated that he is not a law-abiding citizen as a repeat offender.

---

[2]The parties dispute the violent nature of the instant offense. However, it does not matter for our resolution.

See *Brooks*, 2023 IL App (1st) 200435, ¶ 100. Furthermore, defendant's two misdemeanor battery convictions, including one that resulted in bodily harm, are violent offenses that provide reasonably reliable evidence of defendant's violent character. See *People v. Lynch*, 104 Ill. 2d 194, 201 (1984). Defendant has established, through his criminal conduct, that he is "precisely the type of person the government has historically and traditionally sought to disarm." *Travis*, 2024 IL App (3d) 230113, ¶ 36. Therefore, we hold the UPWF statute is constitutional as applied to defendant.

¶ 13                                                    III. CONCLUSION

¶ 14        The judgment of the circuit court of La Salle County is affirmed.

¶ 15        Affirmed.