2021 IL App (3d) 190243

Opinion filed December 14, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0243 Circuit No. 16-CF-1607 |
| DAMON L. COOK JR., | ) ) ) | Honorable Amy M. Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Presiding Justice McDade specially concurred, with opinion.

**OPINION**

¶ 1     Defendant, Damon L. Cook Jr., argues that (1) the State failed to prove him guilty beyond a reasonable doubt of unlawful use of a weapon by a felon (UUWF), (2) his conviction for aggravated unlawful use of a weapon (AUUW) violates the one-act, one-crime rule, and (3) the court erred in sentencing where (a) the court failed to consider his rehabilitative potential and placed undue weight on evidence of his other crimes and the seriousness of the offenses when sentencing defendant for being an armed habitual criminal (AHC), (b) imposed an extended-term

sentence for UUWF, and (c) improperly considered a factor implicit in the offense of AHC in aggravation. We affirm in part and vacate in part.

¶ 2                                    I. BACKGROUND

¶ 3        The State charged defendant with being an AHC, a Class X felony (720 ILCS 5/24-1.7(a)(2), (b) (West 2016)); UUWF, a Class 2 felony (*id.* § 24-1.1(a), (e)); and AUUW, a Class 4 felony (*id.* § 24-1.6(a)(1), (3)(A-5), (d)(2)). The matter proceeded to a bench trial.

¶ 4        Sergeant Dirk Obermayer with the Will County Sheriff's Department testified that on July 19, 2016, at approximately 6:40 p.m., he observed a van that matched the description of a van involved in a recent shooting at a liquor store. Obermayer pulled behind the van while it was stopped at a gas station. The driver's seat was vacant, and Jordan Jervase was pumping gas. Obermayer requested that the three remaining occupants exit the van. After the occupants exited, Obermayer observed a firearm near the rear driver's side seat "in front and offset a little bit to the right." Obermayer explained, "if you cut the distance between the rear driver's side seat and the back of the driver's side seat, right there in the middle, kicked to the right just a little bit. Pretty much in between like the armrest." Obermayer identified the firearm as a loaded 9-millimeter firearm.

¶ 5        On cross-examination, Obermayer stated that, when he pulled behind the van, he saw defendant sitting in the back seat. At the time, defendant was not wearing a hat. Obermayer testified that Quinton Weekly, the individual sitting in the rear driver's side bucket seat would be closer to where the firearm was found. Dameon McCullum-Smith was seated in the front passenger seat. Defendant was sitting in the rear passenger bucket seat. The firearm was situated so that all of the occupants of the van would have equal access.

2

¶ 6       Deputy Thomas Hannon was with Obermayer when he pulled behind the van. Hannon observed the driver, Jervase, wearing a black shirt and black jeans. McCullum-Smith wore a white shirt and a dark pair of jeans. Weekly was shirtless and wore blue athletic shorts. Defendant wore a gray shirt and black athletic shorts. None of the individuals wore a hat. Hannon saw a red baseball hat "in front of the rear driver's side bucket seat nearest to the aisle" within reach of either rear seat passenger. Lieutenant Jason Elledge picked up the hat and uncovered a firearm. The hat had completely covered the firearm.

¶ 7       Detective David Welsh interviewed defendant on July 20, 2016, regarding the events that occurred the day before. At some point on July 19, 2016, defendant was with Jervase, McCullum-Smith, and Weekly and traveled to a liquor store. Jervase drove the van, McCullum-Smith sat in the front passenger seat, Weekly sat in the rear driver's side seat, and defendant sat in the rear passenger side seat. Defendant entered the liquor store to make a purchase. After defendant exited the store and Jervase left the parking lot, they realized they forgot to purchase something and returned to the liquor store. An individual in another van began shooting. Jervase drove from the scene to another location where police stopped them. Defendant denied wearing a red hat and possessing a firearm. While police searched the van, defendant observed a firearm located in front of the rear driver's side seat. Defendant said that McCullum-Smith was going to "take the hit for the [firearms]."

¶ 8       The parties entered an agreed stipulation to certified copies of defendant's three prior convictions for UUWF, Class 2 and 3 felonies, and AUUW, a Class 4 felony.

¶ 9       The parties stipulated that Deputy Adam Tapper would testify that while investigating a shooting on July 19, 2016, he reported to a liquor store at approximately 6:20 p.m. Tapper observed

3

the store surveillance video from 6:10 p.m., which showed a parked van.[1] A male exited the van and entered the liquor store. The man was wearing a gray shirt with a pink design on the front, dark pants, red and white shoes, and a red baseball hat. Two minutes later, the man exited the store and reentered the van. The front seat passenger in the van wore a white T-shirt. Tapper would testify that the van in the video matched the vehicle stopped by police. Further, the man entering the liquor store matched defendant's description from that day.

¶ 10    Further, the parties stipulated that Michelle Thomas, a forensic scientist with the Northeastern Illinois crime laboratory, would testify that she compared defendant's DNA with the DNA located on the recovered firearm and the red hat. In one sample taken from the firearm, Thomas identified three profiles, one being a major profile. The major profile identified excluded defendant as a contributor. The other two profiles were unsuitable for comparison. Thomas identified three DNA profiles on the red hat, finding the major profile matched defendant's DNA. The two other profiles were unsuitable for comparison.

¶ 11    The court found defendant guilty on all counts. In reaching its decision, the court found that defendant was identified as the individual on the surveillance video entering and exiting the liquor store wearing the red hat. When officers stopped the van, they located a firearm under that red hat. The hat covering the firearm contained defendant's DNA. The hat and firearm were in the rear passenger side area, closer to the driver's side, but still accessible to defendant. The court noted that exclusive possession is not required and, under the theory of joint possession, the act of covering the firearm with the hat showed that defendant knew the firearm was there and had the intent to exercise control over it.

---

[1]The referenced surveillance video was not entered into evidence at trial.

¶ 12 On January 9, 2017, defendant filed a motion to vacate his conviction due to insufficient evidence. Specifically, defendant argued that the court improperly considered in its finding that a firearm had been fired from the vehicle that defendant occupied and that he wore a red hat that covered the firearm "some time on that day."

¶ 13 On February 7, 2017, the court denied defendant's motion, stating that

"[o]n the floor within the proximity of both the back seat passengers was a [firearm] and it was just sitting there. It was concealed by the red hat that was identified that your client was wearing 20 minutes earlier and there was his DNA on it. I think the hat on it shows knowledge. The hat on it shows proximity, and the concealing of it establishes the control."

¶ 14 Defendant filed a motion for a new trial. Defendant alleged that he was denied his right to effective assistance of counsel where counsel failed to review discovery with defendant prior to trial.

¶ 15 The court held a hearing on defendant's motion for a new trial. Defendant testified that, if counsel had informed defendant of the DNA evidence, defendant "could have clarified how [the red] hat got taken off [defendant's] head." The court denied defendant's motion.

¶ 16 Prior to sentencing, the State charged defendant in a separate case with attempted murder for an incident that occurred on March 9, 2016.

¶ 17 The matter proceeded to sentencing. The court noted that it had received a presentence investigation (PSI). The State presented argument in aggravation and noted defendant's prior felony convictions.

¶ 18 Following evidence in aggravation and mitigation, the court stated,

"First of all, I want to make it clear I am just sentencing you for [AHC, UUWF, and AUUW], not for any involvement in the [March 9, 2016] shooting. So it's just this case.

I've considered the arguments, the evidence presented here in aggravation and mitigation. I do note that out of the three prior felonies, two of them involved [firearms]. This one involves [firearms].

It's the Court's decision that I am going to sentence you to ten years in the Department of Corrections."

The State informed the court that defendant could not receive 10 years' imprisonment for AUUW, and the court changed the sentence to 6 years' imprisonment. The court sentenced defendant to 10 years' imprisonment for AHC and UUWF and ordered all of the sentences to run concurrently.

¶ 19        Defendant filed a motion to reconsider his sentence. Defendant argued his sentence was excessive because the court improperly weighed the factors in mitigation and erroneously considered his pending attempted murder charge. The court denied defendant's motion. Defendant appealed.

¶ 20                                  II. ANALYSIS

¶ 21                           A. Sufficiency of the Evidence

¶ 22        Defendant argues the State failed to prove him guilty beyond a reasonable doubt of UUWF because the evidence failed to establish that he constructively possessed the firearm found in the van.

¶ 23        When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

6

doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Id.* Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 24        To prove defendant guilty of UUWF, the State was required to show defendant "knowingly possess[ed] on or about his person *** any firearm *** [and] has been convicted of a felony." 720 ILCS 5/24-1.1(a) (West 2016). Defendant does not contest that he was previously convicted of a felony. Rather, defendant argues that the State failed to show that he was in constructive possession of a firearm.

¶ 25        " '[C]onstructive possession of a firearm may be shown where the person has knowledge of the presence of the weapon and exercises immediate and exclusive control over the area where the firearm is found.' " *People v. Wise*, 2021 IL 125392, ¶ 25 (quoting *People v. Brown*, 2020 IL 124100, ¶ 11). Circumstantial evidence is sufficient to establish knowledge. *People v. Rangel*, 163 Ill. App. 3d 730, 739 (1987). "A defendant's mere presence in a car, without more, is not evidence that he knows a weapon is in the car." *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). "[A] 'person's knowledge of the place or location of the [item] alleged to be possessed is not the equivalent of possession.' " *Wise*, 2021 IL 125392, ¶ 28 (quoting *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 17). However, a court may consider defendant's proximity to the weapon when determining constructive possession. *Id.* ¶ 29.

¶ 26     With regard to constructive possession, our supreme court in *Wise* recently noted that a weapon must be " 'in such close proximity that it can be readily used as though on the person.' " *Id.* ¶ 33 (quoting *People v. Liss*, 406 Ill. 419, 422 (1950)). The *Wise* court stated that the firearm offense statutes were implemented to serve a specific deterrent purpose. *Id.* ¶ 31. To satisfy this purpose, " 'it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon.' " (Emphases in original.) *Id.* (quoting *People v. Condon*, 148 Ill. 2d 96, 110 (1992)).

¶ 27     In the present case, defendant was seated in the rear passenger seat of a van. The firearm was located on the floor in front of the rear driver's side seat closer to the middle aisle. According to the officers' testimony, defendant was close enough to have ready access to the firearm, and the firearm would have been visible to defendant. From these facts, a reasonable person could infer that defendant knew the firearm was in the van.

¶ 28     Not only did defendant know the location of the firearm, but he exercised immediate and exclusive control over it. Defendant's position in the van gave him immediate access and timely control over the firearm, where defendant could have made an instantaneous decision to use the firearm. See *Condon*, 148 Ill. 2d at 110. The hat located over the firearm contained defendant's DNA and matched the hat defendant was observed wearing in the surveillance video shortly before being stopped by police. Further, the record inferentially indicates that defendant used his hat to conceal the firearm, showing defendant's control over the firearm. The firearm's proximity to other individuals in the van does not diminish defendant's immediate and exclusive control. See *People v. Hill*, 226 Ill. App. 3d 670, 673 (1992) (" 'When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of joint possession.' " (Emphasis omitted.) (quoting *People v. Williams*, 98 Ill. App. 3d

844, 849 (1981))). Therefore, the State presented sufficient evidence to prove beyond a reasonable doubt that defendant constructively possessed the firearm and was guilty of UUWF.

¶ 29                                   B. One-Act, One-Crime Rule

¶ 30        Defendant argues his AUUW conviction violates the one-act, one-crime rule because it derives from the same physical act as his UUWF conviction. Although defendant forfeited review of this error, the State concedes that it is a reversible plain error.

¶ 31        Under the one-act, one-crime rule, "a defendant may not be convicted of multiple offenses that are based upon precisely the same single physical act." *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). "If a defendant is convicted of two offenses based on the same act, the conviction for the less serious offense must be vacated." *People v. Ellis*, 401 Ill. App. 3d 727, 729 (2010). We review the application of the one-act, one-crime rule *de novo*. *People v. Coats*, 2018 IL 121926, ¶ 12.

¶ 32        Here, defendant's UUWF and AUUW convictions derive from the same physical act, possessing the firearm discovered in the van. Although defendant failed to preserve this issue for appellate review, it is subject to reversal under the second prong of the plain error doctrine because it affects the integrity of the judicial process. *People v. Harvey*, 211 Ill. 2d 368, 388 (2004). Therefore, we vacate defendant's AUUW conviction, as it is a Class 4 felony and a lesser offense than the Class 2 UUWF offense that derived from possessing the firearm. See 720 ILCS 5/24-1.6(a)(1), (3)(A-5), (d)(2) (West 2016); see also *id.* § 24-1.1(a), (e).

¶ 33                                   C. Sentencing Error

¶ 34        Defendant raises three issues with his sentence, arguing the court (1) imposed an excessive sentence for AHC where the court failed to consider defendant's rehabilitative potential and placed undue weight on evidence of his other crimes and the seriousness of the offenses, (2) erroneously

imposed an extended-term sentence for UUWF, and (3) improperly considered a factor implicit in the offense of AHC in aggravation.

¶ 35    We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will find an abuse of discretion only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 36    At the outset, we note that, as defendant was charged, the statutory sentencing range for UUWF, a Class 2 felony, is 3 to 14 years' imprisonment. See 720 ILCS 5/24-1.1(a), (e) (West 2016). The statutory sentencing range for AHC, a Class X felony, is 6 to 30 years' imprisonment. *Id.* § 24-1.7; 730 ILCS 5/5-4.5-25(a) (West 2016). Defendant's 10-year prison sentence for AHC and concurrent 10-year prison sentence for UUWF are within the statutory range for both offenses. Therefore, defendant's sentences are presumptively valid, and defendant bears the burden to rebut this presumption. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12.

¶ 37                                    1. Excessive Sentence for AHC

¶ 38    Defendant argues that his 10-year sentence for AHC was "disproportionate and contrary to the spirit and purpose of the law in rehabilitating and restoring" defendant. Additionally, the court placed undue weight on the seriousness of the AHC offense and the evidence of defendant's other bad acts. The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent

10

evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight that the circuit court should attribute to any factors in aggravation and mitigation depends on the particular circumstances of the case. *Id.* The court is not required to cite each factor it considered in fashioning a defendant's sentence. *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011). Defendant " 'must make an affirmative showing that the sentencing court did not consider the relevant factors.' " *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11 (quoting *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38).

¶ 39       The legislature determined that AHC is a serious offense when it categorized it as a Class X felony punishable by a sentence of up to 30 years' imprisonment. 720 ILCS 5/24-1.7 (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016); see also *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005) (noting "the legislature is institutionally better equipped to gauge the seriousness of various offenses"); *Johnson*, 237 Ill. 2d at 98-99 (indicators of the seriousness of the offense include the maximum possible sentence and the legislative classification, mental state required, and the specificity with which each offense is defined in the statute). To be subject to this sentencing range, a defendant need only "receive[ ], sell[ ], possess[ ], or transfer[ ] any firearm after having been convicted a total of 2 or more times of any combination of the following offenses: *** (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon." 720 ILCS 5/24-1.7(a)(2) (West 2016). The sentencing scheme does not require any specific findings to subject a defendant to the maximum 30-year prison term.

¶ 40    Initially, defendant's 10-year prison term is presumptively proper, as it falls well within the statutory guidelines for a Class X felony. It is also reflective of defendant's criminal history, as this is defendant's fourth felony conviction. *Supra* ¶ 36; *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) ("criminal history alone" may "warrant sentences substantially above the minimum").

¶ 41    In the present case, the record establishes that the court properly weighed the factors in aggravation and mitigation. The court was aware of the defendant's conduct, as it had both presided over defendant's bench trial and received his PSI before it imposed the sentence. At sentencing, the court noted defendant's prior weapons related convictions but did not rely on those convictions in aggravation when it sentenced defendant for AHC and UUWF. The court generally issued a 10-year sentence for both offenses and did not specify any aggravating factors in reaching that sentence. Therefore, the court did not abuse its discretion in sentencing defendant to 10 years' imprisonment for AHC.

¶ 42    We further reject defendant's contentions that the court failed to consider defendant's rehabilitative potential and improperly considered the seriousness of the offense and the evidence of defendant's other crimes. Defendant fails to support these contentions with affirmative evidence from the record. See *Wilson*, 2016 IL App (1st) 141063, ¶ 11. Instead, defendant relies on the 10-year sentence imposed and the evidence presented to the court at sentencing. However, the court explicitly stated that it was not considering defendant's pending attempted murder charge as a factor in its sentencing determination. Accordingly, defendant's AHC sentence is not excessive or the result of an abuse of discretion.

¶ 43    2. Excessive Sentence for UUWF

¶ 44    Defendant contends that the court erroneously imposed an extended-term sentence for UUWF. In support, defendant cites section 5-4.5-35 of the Unified Code of Corrections (730 ILCS 5/5-4.5-35 (West 2016)), which sets forth the general sentencing and extended-term ranges for Class 2 felonies. However, section 24-1.1(e) of the Criminal Code of 2012 (Code), the section that establishes the UUWF offense, expressly provides a sentence range of 3 to 14 years' imprisonment, with no mention of extended-term sentencing, for the Class 2 Felony offense of UUWF. See 720 ILCS 5/24-1.1(e) (West 2016). Defendant's 10-year prison sentence for UUWF is well within the statutory range set forth in section 24-1.1(e) of the Code. Therefore, this sentence is not excessive.

¶ 45                    3. Improper Consideration of an Implicit Factor of AHC

¶ 46    Defendant argues that, at sentencing, the court improperly considered defendant's prior convictions for UUWF, an element implicit in the offense of AHC.

¶ 47    A factor implicit in the offense for which a defendant is found guilty may not be considered a factor in aggravation. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). "Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' " *Id.* at 11-12 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992)). The dual use of a single factor, known as a " 'double enhancement,' " is prohibited under the presumption that the legislature considered the factor when setting the sentencing range. *Id.* at 12 (quoting *Gonzalez*, 151 Ill. 2d at 85). There is a strong presumption that the circuit court based its sentencing determination on proper legal reasoning. *People v. Bowman*, 357 Ill. App. 3d 290, 303-04 (2005). It is defendant's burden to affirmatively establish that the sentence was based on improper considerations. See *Wilson*, 2016 IL App (1st) 141063, ¶ 11.

13

¶ 48     In the present case, the State was required to prove that defendant had two or more prior convictions to prove defendant's guilt of AHC. 720 ILCS 5/24-1.6(a)(1), (3)(A-5) (West 2016). The court did not state its specific considerations or enter separate sentences for UUWF and AHC. Instead, it entered 10-year sentences for both AHC and UUWF. *Supra* ¶ 41. While imposing these sentences, the court noted defendant's prior weapons convictions. However, there is no indication that the court improperly considered defendant's prior convictions when it sentenced defendant for being an AHC or that it gave defendant a harsher sentence because of defendant's prior convictions. See *Phelps*, 211 Ill. 2d at 11-12; see also *Wilson*, 2016 IL App (1st) 141063, ¶ 11.

¶ 49     Even assuming, *arguendo*, that the court improperly considered defendant's prior convictions in aggravation, the court did so in passing, and defendant's sentence was substantially less than the maximum sentence permissible by statute. See *People v. Bourke*, 96 Ill. 2d 327, 330, 333 (1983) (the circuit court afforded insignificant weight to an improper factor where it stated that it would " 'only comment in passing' " as to a factor inherent in the offense and where defendant's sentence was "substantially below" the maximum permissible sentence). Therefore, the court did not abuse its discretion when sentencing defendant for AHC.

¶ 50                                        III. CONCLUSION

¶ 51     The judgment of the circuit court of Will County is affirmed in part and vacated in part.

¶ 52     Affirmed in part and vacated in part.

¶ 53     PRESIDING JUSTICE McDADE, specially concurring:

¶ 54     In this case, we affirm the conviction of defendant, Damon Cook Jr., for unlawful use of a weapon by a felon; vacate, on one-act, one crime grounds, his conviction for aggravated use of a weapon by a felon; and reject all three of his sentencing challenges. I concur with those findings because the restrictions on our review are clearly established in the precedents cited in the decision.

14

I write separately, however, to comment on the frustration of defendant's attempt to attack his sentence for the offense of armed habitual criminal as excessive.

¶ 55    In mounting his challenge, defendant invokes the stated goal of the Illinois Constitution of achieving sentencing decisions that appropriately balance the seriousness of the offense with a defendant's restoration to useful citizenship. Careful attention to the law by which our decision is guided (set out *supra* ¶ 38) reveals the incongruous juxtaposition of the following propositions:

> (1) The trial court has wide latitude in sentencing within the statutory range *"[a]s long as* it does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." (Emphasis added.)

> (2) The court is *not required to cite each factor it considered* in fashioning a defendant's sentence.

> (3) However, to prevail, a defendant "must make *an affirmative showing* that the sentencing court did not consider the relevant factors." (Emphasis added.)

Nothing could be simpler or fairer—for a defendant who is blessed with extrasensory perception. For any normal defendant, however, the inevitable conclusion is the one we reach in paragraph 42:

> "We further reject defendant's contentions that the court failed to consider [his] rehabilitative potential, and improperly considered the seriousness of the offense and the evidence of defendant's other crimes. *Defendant fails to support these contentions with affirmative evidence from the record.*" (Emphasis added.)

Cursed with a lack of mental superpowers, the defendant was relegated to "reli[ance] on the 10-year sentence imposed and the evidence presented to the court at sentencing." And because the trial court specifically disclaimed reliance on *one* challenged aggravating factor, we reject the possibility that it improperly relied on or gave weight to any of them.

¶ 56    Not only do these procedures effectively deprive a defendant of a reasonable opportunity to support a potentially valid challenge to a sentencing decision, they also prevent this court from undertaking a meaningful review of the circuit court's level of compliance with an expressed goal of our state constitution. Our power to review is limited to presuming—and hoping—that the trial court knew and followed the law.

**No. 3-19-0243**

| | |
|---|---|
| **Cite as:** | *People v. Cook*, 2021 IL App (3d) 190243 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 16-CF-1607; the Hon. Amy M. Bertani-Tomczak, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Editha Rosario-Moore, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Jessica A. Theodoratos, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |