**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230126-U

Order filed June 25, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0126 Circuit No. 20-CF-335 |
| NATHANIEL A. SOLIS, | ) ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:  (1) The court did not deprive the defendant of his constitutional right to self-representation. (2) The court did not err in sentencing the defendant.

¶ 2   The defendant, Nathaniel A. Solis, appeals his convictions for criminal sexual assault and aggravated criminal sexual assault. First, the defendant argues that the La Salle County circuit court violated his right to self-representation. Second, the defendant contends that the court improperly considered his assertion of innocence in aggravation at sentencing.

¶ 3                                      I. BACKGROUND

¶ 4         On September 29, 2020, the State charged the defendant with two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1), (3) (West 2020)), and one count of aggravated criminal sexual assault (*id.* § 11-1.60(d)). On October 14, 2020, the court granted the defendant's request to appoint the public defender. The State informed the court the charges were subject to DNA analysis and requested that the court order the defendant to provide a DNA sample. The court ordered the defendant to submit a DNA sample over counsel's objection.

¶ 5         On November 4, 2020, the State informed the court that it had filed a rule to show cause asking to hold the defendant in contempt for refusing to comply with the court's order to provide a DNA sample. The defendant told the court that a different attorney had advised him not to submit because his DNA was "already in the system," and the defendant was in the process of hiring a private attorney. The court continued the matter for the defendant's compliance.

¶ 6         On November 25, 2020, the defendant indicated that he had not hired private counsel and continued to refuse to provide a DNA sample. The defendant addressed the court and the following colloquy occurred:

         "THE DEFENDANT: I want these—can I get these filed *instanter*, [Y]our Honor?

         THE COURT: Nope. You're not representing yourself. If you want it filed, then you have to do a motion—

         THE DEFENDANT: That's what this is.

         THE COURT:—to file them to represent yourself and allow the filing. You have to ask for leave to file them.

THE DEFENDANT: That's what I asked for. Leave. *** [A]in't nobody representing me but myself right now.

THE COURT: Well, yes, there is.

THE DEFENDANT: No. [The public defender] ain't representing me.

THE COURT: Don't argue with me. File a motion.

THE DEFENDANT: So you're denying me to file this?

THE COURT: No. I'm telling you the right way to do it. I am not denying you anything.

THE DEFENDANT: Okay.

THE COURT: You have to do it the right way. You have to file a motion to allow [the public defender] to be left out.

THE DEFENDANT: He ain't left out.

THE COURT: *** [N]ot yet. Not legally. And you represent yourself, giving me reasons why you're competent to waive that right. Because I decide in the final picture whether—and the issue is are you able to voluntarily waive—are you competent to waive your right to counsel and represent yourself? That's the thing I have to decide. So you can file that between now and the next court date I set.

* * *

THE COURT: *** You file the right things, and I will listen to you.

THE DEFENDANT: Yep. That's fine. That's fine.

THE COURT: You do it right, and then we will listen. Very good.

THE DEFENDANT: *** I just want to get a fair trial. That's all.

THE COURT: Well, we will talk about that. That's why you will be filing the motions you will."

¶ 7 In the several court dates that followed, the court found the defendant in contempt and sentenced him to jail until he submitted a DNA sample. The defendant continued to refuse and informed the court that he was in the process of hiring private counsel. The defendant did not file a motion requesting self-representation or raise the issue again. On January 7, 2021, the State indicated that it had received communication from a private attorney who planned to represent the defendant. Private counsel filed his appearance, the defendant submitted his DNA sample, and the contempt citation was lifted by agreement.

¶ 8 On August 20, 2022, the matter proceeded to a jury trial. The evidence adduced showed that the defendant was A.Y.'s uncle. On May 12, 2020, A.Y. was 14 years old and the defendant was 36 years old. On that date, A.Y.'s back was sore after working out with the defendant, and she asked the defendant to massage her back. The defendant started massaging her shoulders but proceeded to pull down A.Y.'s pants and underwear, grab her buttocks, touch her vagina with his fingers, kiss her breasts, and make her touch his penis with her hands. During the assault, A.Y. attempted get away from the defendant, but the defendant followed her, picked her up, and had sexual intercourse with her, causing pain. The following day, A.Y. told her grandmother and a sexual assault examination was completed. The nurse performing the sexual assault examination observed a bleeding abrasion on A.Y.'s cervix. Samples collected from A.Y.'s left breast contained the defendant's DNA, and the defendant's semen was located on A.Y.'s underwear. The defendant denied A.Y.'s allegations when interviewed by police. The defendant explained that his DNA could have been on A.Y. and her underwear because he "had masturbated at some point and had

4

ejaculated and then used a towel to clean himself off" as well as "wip[ing] his mouth off" and A.Y. "must have used that towel." The defendant accused A.Y. of fabricating the allegations to "get him out of the house" and "keep him from telling her grandmother about things she was doing." The jury found the defendant guilty of all three offenses.

¶ 9 The defendant's presentence investigation report showed prior adult convictions for unlawful possession of a firearm in 2000, residential burglary in 2001, and aggravated battery in 2015. The defendant obtained his general education diploma in 2005 while incarcerated. The defendant indicated that he had two children and did not reside with or support either financially. The defendant reported that he had been employed at several different companies beginning around 2014, but the probation officer was unable to verify this information. The defendant included two letters in mitigation, which indicated that he was a good father and present in his children's lives, the defendant was honest, trustworthy, and always tried to do the right thing despite negative influences. The defendant submitted a letter stating that he was innocent and wrongly convicted of the crimes. The letter discussed his difficult childhood and his sister passing away several years before. It also stated that he is a "great father," and his absence negatively impacted his children. The defendant's statement in allocution reiterated his claim of innocence, stating that he "can't show remorse for something [he] didn't do," urging the court to "[t]rust" him that if he "did something" he "would accept [the] consequences," and promised the court that he did not commit the crimes.

¶ 10 In its ruling, the court stated, "the problem with the idea of remorse is exactly what [the defendant] is saying. He maintains his innocence and so he's not going to show remorse, but I am going to have to say there is no remorse here as a factor in aggravation, and I'm not holding anything against anybody about going to trial. That's a fact of this case that we have to deal with."

5

The court also stated that it did not consider the familial connection between the defendant and A.Y. in aggravation due to that fact being inherent in the offense. The court found the defendant's criminal history "extremely aggravating." The court continued, "There is no remorse here, and I did sit in the trial, and this Court believes under the law that the victim's testimony was more credible that anybody else, and I find that the defendant's guilt was overwhelming during this trial ***." The court sentenced the defendant to 12 years' imprisonment for the two merged counts of criminal sexual assault and a consecutive 3 years' imprisonment for aggravated criminal sexual assault. The defendant did not file a motion to reconsider sentence. The defendant appealed.

¶ 11                                II. ANALYSIS

¶ 12                        A. Right to Self-Representation

¶ 13        On appeal, the defendant first argues that his convictions must be reversed and the cause remanded due to the court's violation of his constitutional right to self-representation. Specifically, the defendant contends that the court ignored his unequivocal request for self-representation when it did not permit him to file his motion requesting self-representation and failed to admonish him accordingly.

¶ 14        At the outset, the defendant admits that he forfeited this error by failing to raise it in the circuit court, but asks that we consider the issue under the second prong of the plain error doctrine. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005). The first step in the plain error analysis is to determine whether a clear or obvious error occurred. *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 15        The United States Constitution and Illinois Constitution establish a defendant's right to counsel, including a defendant's right to self-representation. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Baez*, 241 Ill. 2d 44, 116 (2011). A defendant's request to proceed *pro se* must be clear and unequivocal and the waiver of counsel must be knowing and intelligent.

6

*Baez*, 241 Ill. 2d at 115-16. "In determining whether a defendant's statement is clear and unequivocal, a court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation." *Id.* at 115. A court is required to indulge in every reasonable presumption against the waiver of the right to counsel. *Id.* "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances of that case, including the background, experience, and conduct of the accused." *Id.* In making this determination, "courts may look at the defendant's conduct following the defendant's request to represent himself." *People v. Burton*, 184 Ill. 2d 1, 24 (1998). If a defendant's request to represent himself is freely, knowingly, and intelligently made, it must be accepted. *People v. Lego*, 168 Ill. 2d 561, 564 (1995). The court's denial of a defendant's request to waive counsel and proceed *pro se* is reviewed for an abuse of discretion. *Baez*, 241 Ill. 2d at 116.

¶ 16          In the present case, the defendant informed the court that he wanted to file a request to proceed *pro se* in open court. The court did not allow the defendant to file his motion in open court but instructed him to file the motion after court and before the next court date. The court repeatedly assured the defendant that once he filed the motion, it would "listen to [the defendant]." These facts show that the court did not simply reject the defendant's self-representation claim. Instead, the court's actions reflect its "inherent authority to control its own courtroom, docket, and manage defendant's *pro se* inefficiencies." *People v. Cummings*, 2023 IL App (1st) 220520, ¶ 54. The court gave the defendant an opportunity to file a detailed motion outlining his request, ensuring that it could make a thoughtful determination regarding whether the defendant knowingly and voluntarily waived his right to counsel. On the following court dates, the defendant abandoned his self-representation request by failing to file a written request as directed by the court or otherwise

7

persist in his request. Therefore, the defendant's request was not clearly and unequivocally made. See *Baez*, 241 Ill. 2d at 117 ("Even if a defendant gives some indication that he wants to proceed *pro se*, he may later acquiesce in representation by counsel.").

¶ 17    Additionally, viewing the context of the proceeding, the defendant's actions before and after his request indicate that his request was not truly motivated by a desire to represent himself, but to avoid submitting to the DNA sample. See *Burton*, 184 Ill. 2d at 24. That the defendant refused to submit to the sample, indicating that he would hire private counsel, requesting to proceed *pro se*, participating in contempt proceedings, continuing to inform the court that he wanted to hire private counsel, and then submitting to the DNA sample after hiring private counsel, indicates that his motivations were related to proving a DNA sample. Therefore, we cannot say that his request was motivated by a true desire to represent himself, and the court did not err by denying the defendant's request to file a motion in open court and not admonishing the defendant under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). See *Baez*, 241 Ill. 2d at 116.

¶ 18                                 B. Sentencing Error

¶ 19    Next, the defendant contends that the court improperly considered his "assertion of innocence" as a factor in aggravation when imposing his sentence. The defendant, again, agrees that he forfeited this contention but asks that we consider counsel's ineffectiveness for failing to raise the issue in a postsentencing motion or consider the issue under the plain error doctrine. Under either theory, we first must consider whether an error occurred as "[a]bsent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture." *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179.

¶ 20    The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

8

citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight that the court should attribute to any factors in aggravation and mitigation depends on the particular circumstances of the case. *Id.* We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will find an abuse of discretion only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 21    At the outset, we note that the statutory sentencing range for a Class 1 felony of criminal sexual assault is 4 to 15 years' imprisonment. 720 ILCS 5/11-1.20(a)(1), (3), (b)(1) (West 2020); 730 ILCS 5/5-4.5-30 (a) (West 2020). The sentencing range for a Class 2 felony of aggravated criminal sexual assault is 3 to 7 years' imprisonment. 720 ILCS 5/11-1.60(d), (g) (West 2020); 730 ILCS 5/5-4.5-35(a) (West 2020). The defendant's 15-year prison sentence is well within the statutory range. Therefore, the sentence is presumptively valid, and the defendant bears the burden of rebutting this presumption. *People v. Busse*, 2016 IL App (1st) 142941, ¶¶ 22, 27.

¶ 22    We do not find that the court considered an improper factor in sentencing the defendant. The court specifically stated that it did not use the fact that the defendant maintained his innocence and proceeded to trial against him. A lack of remorse can be considered in determining sentences

so long as it is "evaluated in light of all the other information the court has about the defendant, and in light of all the other facts of the case in determining what relevant meaning the defendant's attitude displays with respect to his prospect for rehabilitation and restoration to a useful place in society." *People v. Ward*, 113 Ill. 2d 516, 529 (1986). This is exactly how the court considered it, here. Nothing in the record indicates that the court imposed a more severe sentence based on this or would have given him better treatment if he had abandoned his claim of innocence. See *People v. Cook*, 2021 IL App (3d) 190243, ¶ 48. Instead, read as a whole, the record demonstrates that the court properly considered the defendant's lack of remorse in conjunction with the circumstances of the offense, the evidence presented at trial, the defendant's criminal history, and the aggravating and mitigating evidence. Thus, we find that the court's passing comments did not establish that the court considered an improper sentencing factor. See *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007).

¶ 23                                    III. CONCLUSION

¶ 24        The judgment of the circuit court of La Salle County is affirmed.

¶ 25        Affirmed.