**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230377-U

Order filed September 20, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-23-0377 |
| v. | ) | Circuit No. 22-CF-492 |
| | ) | |
| TERENCE L. MILLER, | ) ) | Honorable Howard C. Ryan Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The evidence was sufficient to prove defendant knowingly possessed firearms. (2) The statute under which defendant was convicted is facially constitutional. (3) The statute is constitutional as applied to defendant. (4) The statute does not violate the Illinois Constitution either facially or as applied.

¶ 2    Defendant, Terence L. Miller, appeals his unlawful use of a weapon by a felon (UUWF) convictions, arguing: (1) the State's evidence failed to prove beyond a reasonable doubt that he knowingly possessed the firearms found inside the vehicle he was driving, and (2) the UUWF

statute criminalizing the possession of weapons by felons is unconstitutional both facially and as applied to him. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by indictment with four counts of UUWF (720 ILCS 5/24-1.1(a) (West 2022)). On April 3, 2023, the case proceeded to a bench trial. At trial, former La Salle County Sheriff's Deputy Jaydyn Hawley testified that on December 9, 2022, at approximately 9:54 p.m., he conducted a traffic stop on a vehicle for failure to make a complete stop at a stop sign. Defendant was the driver and sole occupant of the vehicle. Hawley observed cannabis in the cup holder of the center console and asked defendant to exit the vehicle. After a police canine alerted to the presence of narcotics, Hawley detained defendant and searched the vehicle. While standing outside the vehicle, Hawley looked into the backseat through the open driver's side rear door and observed a Westend leather bag "sitting up against the back of the center console where usually the cup holders or the rear vents for the second row is." The Westend bag was positioned between two plastic shopping bags. One shopping bag contained feminine hygiene products and the other contained hair gel and a lighter lanyard. Hawley testified that the top of the leather bag was unzipped, and he was able to see the handle of a firearm inside the bag. Hawley searched the bag and found two 9-millimeter handguns, one was loaded, and a magazine containing seven rounds of ammunition. Hawley stated the firearms were easily within reach of defendant while seated in the driver's seat of the vehicle.

¶ 5        On cross-examination, Hawley confirmed he had been alerted by another officer during the vehicle search that a Black male was "lurking around." When Hawley approached the individual to speak with him, he disappeared around the corner. Hawley further testified that defendant's

2

girlfriend, Kimberly Teasley, was the registered owner of the vehicle. The handguns found inside the vehicle were not tested for fingerprints and were not registered to defendant.

¶ 6        In addition to Hawley's testimony, the State introduced a video recording of the traffic stop taken from the dashboard camera in the squad car. In the video, defendant told Hawley he was on parole and asked repeatedly for his phone to call his lawyer. When Hawley informed defendant he would be conducting a search of the vehicle, defendant argued that he could not perform a search because the vehicle belonged to his girlfriend.

¶ 7        After the court denied defendant's motion for a directed verdict, Teasley testified that the Westend bag found in her vehicle belonged to defendant's brother, Tevin Miller. Teasley stated that on the day in question, defendant went shopping with Tevin in Rockford. Defendant called Teasley after he was pulled over by Hawley. Using a cell phone tracking application, Teasley was able to determine defendant's location and shared that information with Tevin. On cross-examination, Teasley admitted that the written statement Tevin had provided to defense counsel was written by her because Tevin had bad handwriting.

¶ 8        Prior to his testimony, Tevin confirmed he was the defendant in a pending criminal case and the court admonished him about his fifth amendment right against self-incrimination. Tevin testified that he owned the handguns but had no receipts or paperwork because he had purchased them "off the street." Tevin stated he had placed the guns in the vehicle when defendant picked him up to take him shopping for clothes in Aurora. Tevin did not tell defendant about the guns because he knew defendant "wouldn't want one" and he did not want to "put [defendant] in a predicament" because defendant could not possess firearms. Tevin stated that he left the guns in the vehicle when he returned to his home in La Salle because he did not want them around his three-year-old son. When asked if he had disclosed to defendant at any point that he had left the

3

guns behind the center console, Tevin stated he had not "[b]ecause I know if I told him, he was going to play with them or want to fuck with them or *** he would want to mess with them, play with them, and that's not something that he could be around." Tevin testified he believed defendant was going to return home after dropping him off, and he would not have left the guns in the vehicle if he knew defendant was going to continue driving.

¶ 9        On cross-examination, Tevin stated that he kept the bag containing the firearms by the passenger seat door as he was sitting in the vehicle. Tevin later "hid" the unzipped bag behind the center counsel when defendant entered a gas station. After, a friend called to tell him defendant had been pulled over, Tevin went to the scene of the traffic stop but did not speak to the police and admitted he ran from them.

¶ 10       Tevin explained that he asked Teasley to write his statement because he was at work and his hand was oily. When asked why his written statement indicated he went shopping in Rockford, Tevin stated he and defendant travelled through Rockford on their way to Aurora. When asked why he claimed in his written statement that Teasley had informed him about the traffic stop, Tevin testified he had received a call from Teasley after he was notified by his friend that defendant had been pulled over.

¶ 11       Tevin initially testified that he owned a Nike, a Tommy Hilfiger, and an Everlast bag. After the State presented a photograph of the Westend bag that contained the firearms, Tevin stated he had a Tommy Hilfiger, a Westend, and a Nike bag. On redirect, Tevin said that he and defendant first went to Rockford to visit a store and then headed to Aurora to continue shopping.

¶ 12       The court found defendant guilty on all counts, noting he was the sole occupant of the vehicle and was seated in close proximity to the guns. The court reasoned that the immediate visibility of the handle of the gun in the unzipped bag, the bag's position between the two shopping

4

bags containing personal items presumably purchased by defendant while running errands, and the vehicle being owned by Teasley demonstrated defendant had knowledge of the guns. The court indicated it did not find Tevin to be a credible witness.

¶ 13 Defendant's presentence investigation report (PSI) showed prior felony convictions for numerous offenses including residential burglary, home invasion, battery, domestic battery, and aggravated battery. At sentencing, two of the four counts merged, and the court imposed two concurrent terms of six years' imprisonment on the remaining counts. Defendant appeals.

¶ 14 II. ANALYSIS

¶ 15 A. Sufficiency of the Evidence

¶ 16 On appeal, defendant first argues the evidence presented at trial was insufficient to prove he knowingly possessed the two handguns found inside the vehicle. Challenges to the sufficiency of the evidence require the reviewing court to determine, after viewing the evidence and all reasonable inferences therefrom in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the offense were proven beyond a reasonable doubt. *People v. Cook*, 2021 IL App (3d) 190243, ¶ 23. It is not the function of this court to retry the defendant and our judgment will not replace that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses. *People v. Jones*, 2023 IL 127810, ¶ 28. A criminal conviction will not be reversed absent evidence so unreasonable or improbable as to justify a reasonable doubt of defendant's guilt. *Id.*

¶ 17 For defendant to be found guilty of UUWF, the State was required to prove he knowingly possessed a firearm and had a prior felony conviction. See 720 ILCS 5/24-1.1(a) (West 2022); *People v. Ingram*, 389 Ill. App. 3d 897, 899 (2009). Defendant does not dispute he was previously convicted of a felony. Rather, defendant contends the evidence failed to demonstrate he knowingly

5

possessed a firearm under the State's theory of constructive possession. To establish constructive possession, the State needed to show defendant: (1) had immediate and exclusive control over the area where the weapon was found, and (2) had knowledge of the presence of the weapon. See *id.* at 899-900.

¶ 18   Knowledge may be proven by circumstantial evidence. *Cook*, 2021 IL App (3d) 190243, ¶ 25. While a defendant's mere presence in the same vehicle where a weapon is found cannot alone establish knowledge, defendant's proximity to the weapon can be considered when determining constructive possession. *Id.* Additional factors from which knowledge can be inferred include: "(1) the visibility of the weapon from defendant's location in the vehicle, (2) the amount of time in which defendant had an opportunity to observe the weapon, (3) gestures or movements made by defendant that would suggest an effort to retrieve or conceal the weapon, and (4) the size of the weapon." *Ingram*, 389 Ill. App. 3d at 900.

¶ 19   Here, defendant's immediate and exclusive control over the location where the weapons were found as the sole occupant of the vehicle "gives rise to an inference that he possessed the weapons." See *People v. Hines*, 2021 IL App (1st) 191378, ¶ 32. Based on Hawley's testimony, the guns were readily accessible to defendant, as the Westend bag was within reach of the driver's seat. Although the guns were positioned behind the driver's seat, one was partially visible from inside the Westend bag when looking into the back seat of the vehicle. The shopping bags positioned on either side of the Westend bag likely belonged to defendant, as the bags contained personal items other than clothing and remained in the car after Tevin went home. Considering the length of time defendant spent in the car travelling to several different cities to shop and run errands, coupled with the placement of the shopping bags, a reasonable inference can be made that defendant had an opportunity to see the guns inside the unzipped bag. The record does not indicate

defendant made any discernible gestures or movements to retrieve or conceal the guns; however, he did attempt to prevent a search of the vehicle by claiming the police could not lawfully search it because the vehicle belonged to Teasley. Additionally, the court's finding that Tevin was incredible as a witness was not unreasonable based on the inconsistencies in his testimony. See *People v. Bond*, 178 Ill. App. 3d 959, 966 (1989) (criminal possession issue turns on the factfinder's determination as to the credibility of the witnesses and the weight given to their testimony). Therefore, the evidence presented at trial is sufficient to conclude defendant had constructive possession of the weapons found in the vehicle.

¶ 20    In coming to this conclusion, we reject defendant's argument that the evidence presented was "ambiguous" as to the location of the bag. Hawley testified that the bag was "sitting up against the back of the center console where usually the cup holders or the rear vents for the second row is." He indicated that they were readily accessible to defendant from where he sat in the driver's seat. This painted a sufficient picture for the trier of fact without any photographs. Moreover, we reject defendant's discussion of photographs of a similar SUV that were not included in the trial court record.

¶ 21                                B. Constitutionality of UUWF Statute

¶ 22    Next, defendant contends that the UUWF statute is unconstitutional both facially and as applied to him in light of the United States Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Defendant argues that *Bruen* requires the State to affirmatively prove the UUWF statute "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" because it restricts the right to bear arms provided under the second amendment of the United States Constitution (U.S. Const., amend. II).

7

See *Bruen*, 597 U.S. at 19. Defendant asserts that the State cannot meet this burden because Illinois did not criminalize the possession of a firearm by a felon until 1967.

¶ 23        Statutes are presumed to be constitutional and must be construed to uphold their constitutionality whenever reasonably possible. *People v. Wells*, 2023 IL App (3d) 210292, ¶ 19. Therefore, the burden of establishing that a statute is constitutionally invalid lies with the challenging party. *People v. McKown*, 2022 IL 127683, ¶ 29. Whether a statute is constitutional is a matter of law that is reviewed *de novo. Id.*

¶ 24                              1. *United States Constitution*

¶ 25                              a. Facial Challenge

¶ 26        A statute is unconstitutional on its face "only if no set of circumstances exists under which it would be valid." *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 29. Using the historical tradition framework set forth by the Supreme Court in *Bruen*, we recently upheld the facial constitutionality of the UUWF statute. *People v. Travis*, 2024 IL App (3d) 230113, ¶ 33. *Bruen* established a two-pronged analysis for determining whether a statute regulating firearms is constitutional. *Bruen*, 597 U.S. at 26-27. The first prong of the *Bruen* test requires a determination as to whether defendant's conduct falls within the plain text of the second amendment and, if so, the second prong considers whether there is a justification for the regulation rooted in the nation's history and tradition. *Id.*; *Travis*, 2024 IL App (3d) 230113, ¶ 24. After applying the *Bruen* test to the UUWF statute in *Travis*, we concluded that: (1) felons are not excluded from the plain text meaning of "the people" to whom the second amendment applies, and (2) there is a longstanding history and tradition of analogous regulations disarming potentially dangerous individuals that date back to America's founding era. *Travis*, 2024 IL App (3d) 230113, ¶¶ 25, 33. We adopt *Travis*, here, and hold that that the UUWF statute is facially constitutional under the United States Constitution.

8

¶ 27                              b. As-Applied Challenge

¶ 28        As-applied constitutional challenges generally rely on circumstances and facts specific to defendant and therefore must first be raised in the circuit court to develop a record sufficient for appellate review. *People v. Harris*, 2018 IL 121932, ¶ 39. As a threshold matter, defendant acknowledges he did not assert his constitutional claims prior to this appeal. The State argues that defendant's failure to raise his as-applied challenge amounts to forfeiture, as the record is insufficiently developed for review because there is no indication as to whether defendant's prior felony convictions involved the use of a firearm. We disagree. Though the specific facts underlying much of defendant's criminal history may be unknown, defendant's undisputed criminal history is otherwise contained in the record.

¶ 29        Defendant's as-applied challenge is difficult to discern from his facial challenge, which it largely mirrors. Defendant does not present any particular facts that demonstrate how the UUWF statute violates his constitutional second amendment right to bear arms as applied to him, except to observe that the instant charged offense of UUWF did not in itself involve the use of violence. This observation, however, ignores the relevance of defendant's criminal history, which includes unrelated felony convictions for residential burglary, aggravated battery and home invasion. This felony history renders defendant "precisely the type of person the government has historically and traditionally sought to disarm." *Id.* ¶ 36.[1]

¶ 30                              2. *Illinois Constitution*

---

[1] During the pendency of this appeal, the U.S. Supreme Court issued a decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), upholding a federal statute that prohibited certain individuals subject to a domestic violence restraining order from possessing a firearm. After reviewing *Rahimi* and the parties' related supplemental briefs, we determine that decision does not change the above analysis.

¶ 31 Defendant further claims that the UUWF statute violates article I, section 22, of the Illinois Constitution facially and as applied to him. Article I, section 22, provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. In *Travis*, we held the UUWF statute is "a proper exercise of the state's police power, which allows the state to exert, through legislation, control over the dangers posed by firearms and the people who might use them to do harm." *Travis*, 2024 IL App (3d) 230113, ¶ 43. Accordingly, the UUWF statute is valid under the Illinois Constitution both facially and as applied to defendant as a convicted felon.

¶ 32                                  III. CONCLUSION

¶ 33 The judgment of the circuit court of La Salle County is affirmed.

¶ 34 Affirmed.